ALBANY,
Dec. 1831.

Wood
v.
Wood.

---

DEBORAH WOOD, *appellant*, and AMOS WOOD, *respondent.*

A *feme covert* who sues for a seperation or *limited divorce*, must file her bill by *prochein ami.*

Where a bill was filed by a *feme* in her own name, *it was held,* that she was not entitled to an allowance from her husband to carry on the suit.

The rule of the court of chancery, (the 163d,) requiring bills filed by a *feme covert* to be filed by a *next friend,* and that he be a *responsible* person, considered and approved. CHIEF JUSTICE *dissenting.*

APPEAL from chancery. The appellant filed a bill for a *limited divorce* and *alimony,* before the vice chancellor of the first circuit, in January, 1831. The bill was filed in her own name, and not by *prochein ami,* and alleged cruelty and inhuman treatment on the part of the husband, the respondent in this case. In March, 1831, the appellant applied to the vice chancellor for an order requiring the respondent to make an advance to her for the prosecution of the suit, and for the maintenance of herself and three children during the pendency of the suit. The vice chancellor made an order directing the respondent to pay to the appellant, or to her solicitor for her use, $100 towards the present support of herself and children, and directing a reference to a master to enquire and report what further sum ought to be advanced by the respondent towards defraying the expenses of the suit, and towards the weekly allowance of the appellant and her children during the pendency of the suit. The respondent appealed from this order to the chancellor, who in June, 1831, *reversed* the same, giving leave to the appellant to renew the application, on *amending* her bill, by inserting the name of a responsible person as her next friend. From this order the complainant below appealed to this court.

ALBANY,
Dec. 1831.

Wood
v.
Wood.

The following *opinion* was delivered by the chancellor, on reversing the order of the vice chancellor :

" A *feme covert* has no right to file a bill against her husband without the interposition of a next friend, who will be answerable for the costs in case the suit is instituted without any reasonable cause.   If the objectiont appears on the face of the bill, it is a good cause for demurrer, and the objection goes to the whole bill.   Willes' Esq. Pl. 5, n. s.   Mitford, 135. Cooper, 163.   The statute has authorized her, in a suit for a divorce which is to *dissolve* the mariage contract, to institute the same in her own name ; but by the revised statutes this power is only given under the article which relates to divorces on the ground of adultery.   2 R. S. 144, art. 3, § 39.   The section which authorizes the defendant to answer without oath, was never intended to apply to bills filed under the second or fourth articles.   Nor was the 163d rule of the court of chan- cery intended to create any new disqualification, but merely to declare the existing law of the court, andto call the attention of the bar to the distinction which had been made by the revised statutes.   As it appeared on the face of the proceedings that this bill was irregularly and improperly filed in the name of the wife alone, the defendant ought not to have been subjected either to costs or expense, until the irregularity was corrected by the amendment of the bill or otherwise.   In the case of *Mix* v. *Mix*, 1 Johns. Ch. R. 108, it was at least doubtful whether the demurrer could be sustained, and for that reason a small allowance was made for the wife until that question could be decided.   Here the bill is filed not only against the settled law of the court, but in direct violation of one of its standing rules.   It would therefore be unreasonable to compel the defendant to furnish the means of carrying on a suit which the court must see cannot be sustained.   The order of the vice chancellor must therefore be reversed, but without pre- judice to the right of the complainant to renew the applica- tion, if her bill shall be amended by inserting the name of a *responsible* person as her next friend.   There being no evidence that thewifehas any separate estate, no costs can be awarded against her on his appeal.   The appellants' counsel asked for

costs to be paid by the solicitor; but I know of no principle which can authorize an appellate court to charge the solicitor of the respondent with the costs produced by the mistake of the judge whose decision is reversed."

*H. W. Warner*, for appellant. In *Mix* v. *Mix*, 1 Johns. Ch. R. 108, Chancellor Kent directed a monthly allowance to a wife, who had exhibited her bill for a divorce *a vinculo*, &c. although a demurrer was interposed, and the chancellor expressed his doubts as to the jurisdiction; here it is admitted by the chancellor that the only defect existing in the case may be remedied by amendment. In *Kirby* v. *Kirby*, 1 Paige, 261, the present chancellor made a similar order. All that is necessary to justify such order is that the court should have jurisdiction of the person. Besides, our statutes expressly authorize, in a suit of this kind, orders for the payment of monies by the husband to enable the wife to carry on the same during its pendency. 2 R. S. 148, § 58.

At common law the wife could not file a bill against her husband, but by next friend; the disability was removed by statute, 2 R. L. 200, § 10, and all the cases shew that under this statute bills were filed without *prochein ami*. 1 Johns. Ch. R. 108, 364, 604. 4 id. 197. 6 id. 91. 1 Paige, 261. The *revised statutes* are equally explicit; a bill for a divorce, dissolving the marriage contract, may be exhibited by a wife *in her own name*, 2 R. S. 144, § 39, and a separation may be decreed on the *complaint* of a married woman, and the *bill* shall specify, &c. 2 R. S. 146, § 50 and 52. The words *in her own name* are mere surplusage, they are not again repeated in the authority given to exhibit the bill of complaint in the latter case, nor was it necessary they should be; they are not found in the act of 1813, 2 R. L. 200, § 10, and yet it was never imagined under that act that a wife must prosecute by *prochein ami*. There are cases in which divorces are sought, where the statute requires the suits to be prosecuted by guardians or next friends, as where the marriage is sought to be annulled on the ground that the party was under the age of legal consent, an idiot, or lunatic, 2 R. S. 142, § 21, 24, 25; but the requirement is confined to those cases, and should not

be extended by construction. Next friends are only necessary where there is a defect of legal power to sue. Mitford, 125. Cooper, 163. A wife may answer the bill of her husband without *prochein ami*, 3 Atk. 478; so also where she answers separately. Besides, if a next friend was necessary, it could not be required that he should be a *responsible* person; the wife must be left to her choice, and the circumstances of her next friend cannot be inquired into. 1 Vesey, jun. 409. 2 P. Wms. 296, n. 1 Sim. & Stu. 101. To require a responsible person as next friend is virtually requiring security for costs, which formerly might be demanded by a husband on a bill of this kind, 2 R. L. 201, § 12; but that provision is omitted in the revised statute. The chancellor may decree costs *against either party* on the determination of the suit. 2 R. S. 148, § 58. Can it be imagined that a next friend could be subjected to costs? and yet such would be the result if the wife, prosecuting by *prochein ami*, should fail in the suit. As to the power claimed for the chancellor to impose restraints upon suits, and to create disabilities removed by statute, under the general authority given to him to establish, modify, alter and amend the practice of the court, it is utterly denied. The legislature never could have intended to confer such power, by merely authorizing the establishment of rules of practice.

*J. Rhoades*, for the respondent. By the 163d rule of the court of chancery, no bill can be filed by a *feme covert* to obtain a sentence of nullity declaring void her marriage contract, or to obtain a decree for a separation or limited divorce, unless the suit is prosecuted by a *responsible person* as the *next friend* of the complainant, who is made answerable to the defendant for such costs as may be awarded, if it shall appear the suit was commenced without reasonable or justifiable cause. This rule is in conformity with the settled practice of the court of chancery in England, Willes' Eq. Pl. 5, n. s., Mitford, 135, Cooper, 163, 2 Vesey, sen. 452, 1 Hogan, 78, 1 Sim. & Stu. 100, Moseley's R. 47, 86; is in accordance with the provisions of the statute regulating suits by *infants*, 2 R. S. 446, § 2, and is founded in principles of public policy; as suits of this kind

should not be encouraged, unless prosecuted by the advice and with the concurrence of some friend willing to become responsible for the costs. No inconvenience can result from requiring the next friend to be a responsible person, for should it not be convenient for a wife to procure a responsible person by whom to prosecute, the chancellor, on application, would appoint a proper person to prosecute the suit as *prochein ami.* 1 Paige, 181. The rule which had long prevailed in the court of chancery requiring a deposit of $100, by way of security for costs on filing an appeal, was ratified by this court in *Irving* v. *Dunscomb,* 2 Wendell, 205, and is now engrafted in the statutes of the state, 2 R. S. 605, increasing the amount to $250. So in this case, the rule of the court of chancery, requiring a *prochein ami,* and that he be a *responsible person,* is in restraint of litigation, and was adopted by the chancellor under the general powers conferred by statute to establish, modify, alter and amend the practice of the court of chancery, and to remedy abuses and imperfections existing therein. 2 R. S. 175, § 46.

ALBANY,
Dec. 1831.

Wood
v.
Wood.

The following opinions were delivered:

By the Chief Justice. Two questions are presented: 1. Could the plaintiff file a bill for a divorce, *a mensa et thoro,* in her own name, without a *next friend?* 2. Could the plaintiff be required to give security for costs? In relation to the first question, two points seemed to be conceded: 1. That before our statute, a married woman could not prosecute her husband except by *prochein ami,* or next friend; and 2. That since the statute, suits have uniformly been brought in such cases by the married woman alone, without a next friend. At the common law, a *feme covert* could not prosecute as plaintiff without her husband or a next friend, and when the next friend brought the suit, he was liable for costs, like the next friend of an infant. The only difference between the case of an infant and *feme covert* was this; The next friend brought the suit in both cases; when brought for a *feme covert,* it must be with her consent; when for an infant no such consent was necessary. When the statute authorized the wife to file a bill

against her husband, it gave her capacity to prosecute him, and of course no next friend was necessary. The first statute was passed in 1787. It enacts that it shall and may be lawful, in all cases of adultery, &c. for the party injured to exhibit or present a petition or bill to the chancellor of this state, setting forth the adultery of which he or she complains; upon which process shall issue. This act relates to prosecutions for adultery only; it is copied at large in the revision of 1801. 1 Kent & Rad. 93. The act of 1813, 2 R. L. 197, re-enacts the statute of 1787, with some alterations; but the words giving a right to the injured party to exhibit a bill, are substantially the same. The tenth section of this act extends the jurisdiction of the chancellor to a case not embraced in the acts of 1787 or of 1801. It authorizes a *feme covert*, in certain cases, to "exhibit a bill in the court of chancery against her husband, complaining of cruel and inhuman treatment," &c. Under these statutes no next friend brought the suit; the legislature had said that it was lawful for the wife herself to exhibit her bill; she could of course do it in her own name only; she could not use the name of any one as her next friend. It gave a legal capacity to the wife, where there was none before; it enabled her to do what before some friend must have done for her; it enabled her to bring a suit in her own name. Had this suit been brought under the act of 1813, there is no doubt that the plaintiff might sue in her own name, and the defendant might require her to give security for costs before he would be compelled to answer, according to the 12th section of that act.

This suit was brought under the revised statutes of 1830, and it becomes necessary to inquire whether they have altered the practice, or the rights of the parties. By them it is provided, 2 R. S. 144, § 39, as follows: "A bill for a divorce may be exhibited by a wife in her own name, as well as by a husband." This section is under the article which treats of divorces dissolving the marriage contract. Under the next article, which treats of separations or limited divorces, is found the following section, 2 R. S. 146, § 50: "A separation from bed and board forever, or for a limited time, may be decreed by the court of chancery, on the complaint of a married wo-

man, in the following cases; the cases are then enumerated, and the causes for which a separation will be decreed, and then follows the 52d section, as follows: "The bill of the complainant in every such case shall specify particularly the nature and circumstances of the complaint on which *she relies*," &c.

It is contended that the difference in the phaseology between the 39th and 50th sections, has materially changed the rights of the parties and the practice of the court. Is this so? The 39th section declares that a *feme covert* may exhibit a bill in her own name. Suppose the words *in her own name*, had been omitted, in whose name must the bill have been exhibited? Must she have had a next friend? That cannot be contended. It will be recollected that the old statutes authorized the wife to exhibit her bill; and under those statutes she did exhibit her bill in her own name, and could not have done so in any other name. The words, *in her own name*, do not alter the rights of the wife, or the practice of the court; they are mere surplusage. The 50th and 52d sections give the same right. A separation may be decreed "on the complaint of a married woman;" and how is she to make complaint? The 52d section answers that question. The bill of the complainant shall specify the nature and circumstances of the complaint on which she relies. Here the wife is the actor; *she* is to present her bill, and she is to state the causes of complaint on which *she* relies. There is nothing here forbidding the wife to sue, but expressly authorizing it. Nothing is said about a next friend. When a next friend sues, he is the party; he complains; the wife is passive; but not so here. From the very terms of this section the plaintiff must be a female. It is also worthy of note, that in cases of infants, idiots and lunatics, when a next friend must sue, the statute expressly gives the action to the next friend. 2 R. S. 142, 3, § 24, 5, 6, 21. The 21st section is as follows: "A bill to annul a marriage, on the ground that one of the parties was under the age of legal consent, may be brought by the parent or guardian entitled to the custody of such minor, or by the next friend of such minor." So any relative of an idiot or lunatic may prosecute for them. Under the old statutes, no one doubted the

right of the wife to prosecute in her own name, when the legislature said she might exhibit her bill. Here the same legislature say the decree shall be made upon the complaint of a married woman, and that complaint shall be made by bill. In the first case the practice was uniform; she exhibited a bill in her own name; it is to my mind equally clear she must do so under the present statute. On the first question, therefore, it seems to me that the plaintiff must sue in her own name, and not by next friend.

The second question, as to security for costs, must also be determined upon the construction of the statutes. The acts of 1787 and 1801 are silent as to costs. The act of 1813 contains two provisions on the subject. The 12th section provides, that in suits for divorce, *a mensa et thoro*, the defendant might require security for costs, before he should be compelled to answer; and the 14th section gave power to the court to decree costs to either party in any suit under that act, which included suits for divorce, on the ground of adultery. That section has been incorporated into the revised statutes, 2 R. S. 148. § 58: " In every suit brought, either for a divorce, or for a separation, the court may, in its discretion, require the husband to pay any sums necessary to enable the wife to carry on the suit during its pendency; and it may decree costs against either party, &c. But the 12th section of the act of 1813 is not re-enacted, and the act itself is repealed. 3 R. S. 134, No. 138. If there could be any doubt on this fact of repeal, it is removed by the note of the revisors to the 5th article, which states that section 12 is omitted as repugnant in principle to the established practice of the court, recognized in section 60. They must have intended sections 58 and 59; but it is clear section 12 of the laws of 1813 was intentionally omitted, as improper in itself. The result is, that a married woman is entitled to file her bill for a separation; the defendant has no more right, under the present statutes, to require security for costs, than if the bill prayed for a dissolution of the marriage contract for adultery; but upon a final disposition of the case, the chancellor may decree costs against either party. The rights of the parties now are the same, whether the suit is brought for an absolute or a qualified divorce.

In *Pomeroy* v. *Pomeroy*, 6 Johns. Ch. R. 606, a rule requiring the plaintiff to give security was refused, on the ground that the statute did not reach the case where the bill was filed for adultery. The doctrine necessarily contained in this case is, that without the statute, no such rule could be granted. It follows, that as there is now no statute reaching either case, the court cannot now order such a rule at all. The repeal of the 12th section of the act of 1813, without any subsistute, shews that the legislature intended to abrogate the provision altogether ; they intended to open the doors of the court of chancery as wide in favor of one set of abused married women as of the other. There is no reason why those who have suffered personal abuse should not be heard on as favorable terms as those who complain of the infidelity of their husbands. In my opinion, therefore, according to the revised statutes, the defendant had no right to ask security for costs ; and the chancellor had no power to grant any such rule. Upon the two questions stated, I am of opinion, 1. That the bill must be filed by the *feme covert* in her own name ; and 2. That she cannot be called upon to give security for costs, before answer, as under the old statute ; but the chancellor may make such decree as to costs as seems proper, against either party.

Thus far I have examined this case upon the statutes. I am aware that the 163 rule of the court of chancery requires that the suit shall be prosecuted by a responsible person, as next friend of the complainant, who shall be responsible to the defendant for such costs as may be awarded by the court, if it shall appear that the suit was commenced without any reasonable or justifiable cause. " The chancellor shall have power from time to time, by general rules of court, to establish, modify, alter and amend the practice of the court of chancery, in the cases not provided for by any statute." 2 R. S. 175, § 46. If the rule in question shall be found to conflict with the statute, the rule must give away. If I have been correct in my construction of the statute, the plaintiff not only had a right, but was bound to file her bill in her own name, and could do it in no other ; the rule requires it to be done in the name of a third person, and so far must be considered inoperative and void. The statute makes no provision for security

for costs ; and this fact, considered in connection with the re-peal of the former provision, shews the intention of the legis-lature, that no such security should be required. The rule re quires that a responsible person shall be appointed next friend, who shall be liable for the costs. This part of the rule, in my opinion, is opposed to the declared intentions of the legis-lature. By the statute, 2 R. S. 148, § 58, the court " may decree costs against either party, and award execution for the same, or it may direct such costs to be paid out of any property sequestered, or in the power of the court, or in the hands of a receiver." Here are the means within the reach of the court, by which the costs are to be obtained. There is noth-ing here of the costs being obtained from any friend of the plaintiff ; and when we see that clause of the act of 1813 expunged, it is a clear expression of the intention of the le-gislature that no such obstacle should be in the way of the plaintiff to a hearing of her case.

In my opinion, the rule is in conflict with the statute, and is therefore void. The decree of his honor, the chancellor, should be reversed.

By Mr. Justice NELSON. This case involves a question rather of practice than principle, and although not touching the merits, is still of some importance. The chancellor has decided, and so is his 163d rule in express terms, that a *feme covert* must file her bill by a competent *prochein ami*, under the 4th art. of ch. 8, 2 R. S. 146, when she sues for a divorce from bed and board on the ground of ill usage. It it contend-ed by the appellant that she may institute such suit in her own name without a next friend. The rule is universal, un-less an exception is made by the statute, that she must com-mence her suit by bill, in the name of a next friend ; and if the objection appears on the face of the bill, as it does here, the defendant may demur. Mitford, 135. Cooper, 163. The principal question, then, is whether the statute allowing the remedy for the injury above stated has changed, or intended to change the general practice of the court ?

The third article of this chapter provides for a divorce for the cause of adultery, and the 39th section in that article in

express terms gives the right to the wife to exhibit the bill *in her own name*; but it is obvious from the rest of that section, as well as the general arrangement of the revised statutes, that this applies only to the bill for adultery then under consideration, and the section is not to be construed to extend to the proceedings under the fourth article; and if so, it seems to afford an argument that the practice was not intended to be changed in the proceedings under that article. There the act gives to the wife the remedy for ill usage, without particularizing that the bill may be filed in her own name, and leaves the mode of proceeding, therefore, to be regulated by the general practice of the court. The 39th section, in addition to the authority to file the bill in the name of the wife, also provides, that "in all cases the defendant may answer such bill without oath or affirmation." This was undoubtedly intended to be confined to the case of adultery, and is but a continuation of the distinction which existed under the old law, 2 R. L. 198, sec. 2 & 9, and if one part of the section is not to apply to the proceedings under the fourth article, the other cannot. Again; the 12th section of the 2 R. L. 201, provided that in a bill for a divorce for ill usage, the husband might require the wife to give security for costs before he could be compelled to answer; and though this section is not carried into the revised statutes, it may serve to account for the special provision in them in the one case, for the wife to exhibit the bill in her own name, and in the other, subjecting her to the general practice of the court to exhibit it by her next friend, which answers all the purposes intended by this 12th section. The authority given to the wife to file the bill in her own name, in express terms, in the case of *adultery*, shews that the legislature were acting under a knowledge of her disability at common law, and they therefore provided specifically for it; and when, in the very next article, on the same general subject, a remedy is provided for the case of *ill usage*, without expressly removing this common law disability to sue in her own name, the inference to me is that they intended to make a distinction between the two cases, and to leave the prosecution of the latter case to conform to the rules and practice of the court. In the case of adultery, either hus-

band or wife may institute proceedings for a divorce ; and as the husband at common law could sue in his own name, it was only putting the wife upon an equal footing to concede her the same privilege. In the case of *ill usage*, the remedy is confined to the wife, and therefore there does not seem to be any special reasons for distinguishing the mode of proceeding in this case from the one which the wisdom of the common law has universally adopted in relation to a *feme covert*. It is worthy of remark, also, that if the language of the statute in the fourth article will justify the suit in the name of the wife in case of ill usage, then the 39th section in the third article is surplusage, because without it a similar construction of the language there used would authorize such suit in her name in the case of adultery.

If the language of the statute were doubtful, I think the construction of the chancellor is founded upon the soundest view of the act, and of the relation existing between the parties, without injuriously affecting the rights of the wife. Applications for divorces on the ground of ill usage are not to be encouraged, and the interposition of a next friend, who may be the adviser of the wife, and who shall be responsible for the costs, is not an unreasonable check upon such suits. If there be merits in the complaint, there is no woman so destitute but will find a competent friend to advise and protect her interests, and the tendency will be to restrain such suits from being instituted under the impulse of passion, and without reasonable or probable grounds. From the nature of the offence, parties are more liable to be influenced by sudden and temporary excitement than in the case of adultery. These reasons no doubt influenced in the adoption of the section in the old law, which requires the wife in every case of this kind to give security for costs. The court always had a discretion, and now have by statute, 2 R. S. 148, sec. 58, to compel the husband to advance any necessary sum of money to carry on the suit against him, which holds out to the wife and next friend entire security against expenses, if the proceeding be meritorious. In truth, it is only in a case wholly destitute of merits, when the next friend would assume any pecuniary responsibility.

If then the statute does not authorize the wife to file the bill in her own name, (as I am of opinion it does not, from the authorities before referred to,) and if on the face of the bill the chancellor sees that he will be obliged to dismiss it, is it a reasonable exercise of discretion to compel the defendant to advance money to the plaintiff, to carry on an entire nugatory proceeding? I think not. This was not seriously urged on the argument. The chancellor, in the order reversing the order of the vice chancellor, allowed the complainant to renew the motion, on amending her bill by inserting the name of a responsible next friend. It is now contended, that if the wife must exhibit her bill by her next friend, that part of the 163d rule requiring him to be a *responsible person* is erroneous. If the practice was as contended by the counsel for the appellant, not to inquire into the responsibility of the next friend, I am of opinion that the power given to the chancellor, 2 R. S. 605, § 46, " to establish, modify, alter and amend the practice of the court of chancery," and to revise the rules, among other things, to the remedying of such abuses and imperfections as may be found to exist in the practice, fully authorized him to annex this qualification. It was a subject belonging strictly to the practice of the court, and originated in it. The variation at different periods of the practice in the same court, and the difference now existing between the king's bench and common pleas in England, on the subject of requiring security for costs, show how entirely it is under the control of the practice of the courts. But the case of *Fulton* v. *Roscvelt*, 1 Paige's R. 178, *and cases there cited*, clearly shew the better opinion upon authority is, that the court of chancery will require an irresponsible next friend to give security for costs; and it seems reasonably to follow, that it may require, as a condition to the approval of the next friend, that he shall be a responsible person. At law, if the lessor in ejectment be an infant, the court will stay proceedings until security for costs be given, or some responsible person be named as plaintiff. 2 Archb. Pr. 213. 1 T. R. 491.

The principal reason why a next friend or guardian is required by the court in cases of prosecution by an infant, *feme covert*, and others, is, that they have not the competency to make the warrant to the attorney to appear for them, and therefore the warrant comes from the court to the guardian or *prochein ami ;* and it would seem from this that the court might regulate the qualification at discretion, and the early cases say he ought to be a man of estate. 3 Bacon, tit. Infancy, 616. The revised statutes recognize this principle by requiring, in a case of infancy, the next friend to be a competent and responsible person.

I am therefore in favor of affirming the order of the chancellor, but without costs.

By Mr. Senator BEARDSLEY. As it appeared from the pleadings that the bill was filed by the wife in her own name, I think the chancellor was right in anticipating the objection raised by the demurrer, and reversing the order at once, if that objection was well taken.

I see no propriety in compelling a husband to defray the expenses of a suit irregularly commenced against him, and which it is perfectly apparent cannot be sustained. Where unhappy dissensions exist between husband and wife, it is generally sufficiently onerous on his estate that he is compelled not only to support his wife and family separated from him, but to defray the expense of her litigation legally instituted against him. He ought not to be subjected to unnecessary expense, and it is the duty of the court so far to protect him, as to see that his substance is not exhausted in litigation that can arrive at no satisfactory result. If suits are irregularly commenced, the solicitor commencing them, and not the husband's estate, should be held responsible for the expenses. It might be very gratifying to the cupidity of a captious solicitor, who should be more intent on making money out of family dissensions than bringing their difficulties to a speedy adjustment, to try experiments in practice, and subject the husband's estate to all expenses of litigation, whether regular or irregular. I trust that no husband in this country, who

has an estate, will be subjected to such legalized depredations. These remarks are not introduced from any thing that appears in this particular case, but to shew the impropriety of subjecting the husband's estate, to the expense of litigation, when it is apparent that the proceedings are irregular. I think great abuses might be practiced under contrary doctrine.

The question then is, was it regular for the wife to file the bill in her own name, without a next friend ? The decree of the chancellor, in reversing the order of the vice chancellor, is defended on two grounds : first, that according to the well established practice of the court of chancery, a wife must always prosecute by her next friend, where her suit is adverse to the rights of the husband ; and secondly, that this suit was commenced in direct violation of the chancellor's 163d rule. It was admitted on the argument, that in ordinary proceedings in chancery the wife must prosecute her husband by next friend ; but it was contended that when a bill is filed by the wife for *an absolute* or *limited divorce*, the statute has removed her disability, and that she may prosecute in either of these cases in her own name. In regard to bills for an absolute divorce in case adultery, the statute does provide that " a bill for a divorce may be exhibited by a wife *in her own name* as well as by her husband," and in those cases the defendant may answer without oath. 2 R. S. 144, § 39. The 50th section, under which the present proceedings are instituted, enacts that " a separation from bed and board forever, or for a limited time, may be decreed by the court of chancery, on the complaint of a married woman," in certain cases and for certain causes enumerated in the statute. There is a marked difference between the language of the two sections. In one case she may file the bill *in her own name*, placing her upon an equality with her husband ; in the other, a separation may be decreed " on the complaint of a married woman," but the statute is silent as to the mode of preferring such complaint. The legislature having used different language in the two sections, affords a reasonable presumption that it was not intended to put each case upon the same footing, in regard to

practice. The chancellor is authorized by statute to establish rules of practice, and indeed without legislative enactment he would have the right, as one inherent to every court of general jurisdiction. It was the law and practice of the court of chancery in ordinary cases, where a married woman prosecutes in that court in oposition to the rights of her husband, that she must prosecute by her next friend. That is still the law and practice of the court, independent of the chancellor's rule, unless the statute has made new provisions in regard to the practice in these particular proceedings. In bills for a limited divorce, it appears to me, the legislature have not altered the practice, but intended to leave them subject to the ordinary practice of the court of chancery, and such general rules as the chancellor might think proper to prescribe.

I do not deem it necessary to the decision of this cause to decide upon the validity of the 163d rule of the court of chancery, in requiring bills filed by married woman for *absolute*, as well as *limited divorces*, to be filed by their next friend, and in requiring security for costs in all cases under the statute. Whenever a bill shall be dismissed solely for the want of security, or in the case of adultery, for the want of a next friend who shall be responsible, it will present the question whether the chancellor has transcended his powers in prescribing that rule, and then there will be a proper occasion to discuss and settle that question. In the present case the bill was filed for a limited divorce without a next friend, and in direct violation of the chancellor's rule; but independent of that rule, it was irregularly filed as against the settled law and practice of the court. All the books of practice concur in the principle that a *feme covert*, when she prosecutes in chancery in opposition to her husband, must prosecute by her next friend; and the legislature, as I view the question, not having altered the practice in relation to bills for a limited divorce, I am for affirming the order of his honor the chancellor.

On the question being put, *Shall this decree be reversed ?* the members expressed their opinions as follows :

*In the affirmative*—THE PRESIDENT of the Senate, the CHIEF JUSTICE, and *Senators* FOSTER, FULLER, MAYNARD, REXFORD, and SANFORD—7.

*In the negative*—Mr. *Justice* NELSON, and *Senators* ALLEN, ARMSTRONG, BEARDSLEY, CONKLIN, DEITZ, GERE, HUBBARD, LYNDE, MATHER, McLEAN, TALLMADGE, THROOP and TODD —14.

Whereupon the decree of the chancellor was AFFIRMED, but *without costs.*

END OF CASES IN ERROR.

# CASES

## ARGUED AND DETERMINED

#### IN THE

# SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF NEW-YORK,

IN JANUARY TERM, 1829, IN THE FIFTY-SIXTH YEAR OF OUR INDEPENDENCE