## SUPREME COURT.

### COIT agt. COIT.

The wife can not sue her husband without appearing by a next friend, except in the single case of an action for an absolute divorce (*see* 4 *How. Pr R.* 232). The Code says (§ 114) that a married woman may sue "alone." But this is an exception to the general rule, expressed in the same section; that is when she is a party, her husband *must* be *joined* with her. The term "alone" is used there merely in contrast with union with another.

*New York General Term, May* 1850—*Before* EDMONDS, *Presiding Justice,* and EDWARDS and MITCHELL, *Justices.* The plaintiff filed her complaint against her husband, the defendant, in order to reach certain real estate held by him, and which she

alleged to be her separate property. Judgment had been obtained against her at the circuit, and on a motion by her at special term to open that judgment, it had been objected that she had not appeared and prosecuted by her next friend.

At the special term, before EDMONDS, J., it had been held that the objection was fatal, and that a wife could not sue her husband, without appearing by her next friend, or suing *in forma pauperis*, except in the single instance of an action for a divorce. (*See* 4 *Howard's Practice Reports*, 232.)

There was an appeal to the general term.

By the Court, MITCHELL, Justice.—The papers produced on the appeal do not show all the facts stated and admitted by counsel. In August 1848 the plaintiff filed her complaint against the defendant, her husband, alleging that she owned in fee certain lands; that her husband was tenant by the curtsey in those lands, and as such received the rents; but that he neglected to pay the taxes, and that there was danger that the lands would be sold for the taxes and the plaintiff's reversionary interest thus be injured. The cause was several times noticed for trial; at two different circuits it was called and the complaint dismissed, the plaintiff being absent: after the last default the plaintiff moved to open the default, but her motion was denied on the ground that she was irregular in not commencing her suits by a next friend.

The action was of an equitable nature; the common law provided no action for a wife against her husband in such case, nor for a reversioner to compel a tenant for life to pay taxes, where there was no contract between them to that effect. If an action on the case would lie in the last case, it could not provide for future neglects as equity could. If a choice, therefore, remains between the two old systems of practice, it would be proper in this case to adopt that of equity.

Another reason why the practice in equity should be preferred is that the Code expressly declares that it is expedient that the present forms of *action* and pleadings in cases at *common law*, should be abolished, but uses no such language as to forms of actions and pleadings in equity (see recital at beginning of Code).

Section 140 only abolishes the forms of pleading heretofore existing, so far as they are inconsistent with the Code, and *modifies* the forms of pleading as prescribed by that act. So far, therefore, as the equity form of pleading is not inconsistent with the Code it does not seem to be repealed. Section 469 abrogates the former rules and practice of the courts so far as they are inconsistent with that act; but expressly provides that where they are consistent with that act they shall continue in force, subject to the power of the courts to *relax, modify or alter the same.*

The act of 1813 (2 *R. S.* 197-201, § 1 and 12) recognized the distinction between bills for a divorce *a vinculo matrimonii*, and bills by the wife for the cruelty of the husband, and in the last case expressly authorized the husband before he should answer the bill, to require security for costs from the complainant. The adjudication of the highest court of the state (in Wood vs. Wood, 8 *Wend.* 357), and the constant practice of the Court of Chancery before and after that time, show that although the 12th section of the laws of 1813, giving the husband the privilege of requiring from his wife security for costs, was not reenacted in the Revised Statutes, the rule remained the same; and that the wife whenever she prosecuted her husband in chancery was required to do it by her next friend. The cases of infant and non resident plaintiffs were referred to as analogous (see also 3 *Paige,* 387, Robertson vs. Robertson; *id.* 267, Lawrence vs. Lawrence; *2 id.* 454, Wood vs. Wood.

If the decision in that case had rested on the power of the chancellor " to establish, alter, amend and modify the practice" (2 *R. S.* 605, § 46), that power still remains as great as it did before (*Code,* §469), the only restriction being that it must not be exercised in opposition to any existing statute.

It is said the language of the Code is as strong in favor of the wife suing without security in all cases as it was under the Revised Statutes in cases of divorce *a vinculo.* But there is a difference in the phraseology. In the case of an absolute divorce it was provided that the bill might be exhibited by the wife *in her own name* (2 *R. S.* 144, § 39); those words " in her own name"

were relied on as authorizing the suit without surety (see 8 *Wend.* 367, Wood vs. Wood), and the omission of them in other cases as leaving the wife " to the general practice of the court to exhibit her bill by her next friend." The language of the Code is that she may sue " *alone.*"

That a lunatic should sue in the name of his committee, an infant in the name of his next friend and a married woman in the name of her next friend are phrases well understood, meaning that the parties in interest should be the plaintiff, but instead of appearing by attorney, he or she should appear in the name of, or by his or her next friend. When the statute as to absolute divorces used this well understood phrase, it received a construction from the highest court, according to that understanding.

When the Code says the married woman may sue alone, the authority is given only as an exception to the general requirement established in the same section (114), that when she is a party her husband *must* be *joined* with her. The last is the general rule, and it then makes two exceptions in which she may sue " alone"—that is, exceptions in which she need not be joined with her husband. This is all that the term " alone" can mean when it is used in contrast with union with another. It leaves the question whether she shall appear in her own name, or by attorney, or by next friend, untouched.

It was said that this construction would require security in cases of *absolute divorce.* But that would not be so. The Revised Statutes, as to divorces, remain unaffected by the Code, and the practice in those cases remains therefore as before.

It is true that the Code (§ 111) provides that every action must be prosecuted *in the name* of the real party in interest. But these words " in the name," as other words, must be understood from the subject with which they are connected, where, and in § 111 they are employed to prohibit suits being brought by or in the name of those who have a mere legal title, and to require those suits to be brought by the one having the real or beneficial interest except in certain specified cases. The subject there treated of was who the real plaintiff should be, not how he should sue.

Coit agt. Coit.

That these words were used there in that sense only, appears by the 115th section, requiring an infant to appear by guardian.

A lunatic, or one whose faculties are impaired by age, would be the real party in interest; yet can there be a doubt that he must sue by a next friend, or by his committee: and yet the suit would be said to be, and would be, by him alone, unless some estate had passed to his committee.

It was said that the defendant by answering had waived the objection; and that the objection was substantially, that the plaintiff has not legal capacity to sue; and sections 148 and 144 of the Code were relied on for these positions.

Those sections relate to the subject of pleading, and the rule again applies that the meaning of words must be determined by the subject to which they are applied. When the 148th section allows the defendant to object by demurrer, or answer that the plaintiff has not legal capacity to sue—and that if such objection be not taken in either of those modes, the defendant shall be deemed to have *waived* it; it means that he shall be deemed to have waived it so far as the pleading (the subject treated of) is concerned. If an infant were suing by attorney or in person, so that he could afterwards reverse or appeal a judgment against him, the defendant should be allowed to stay proceedings until the irregularity should be amended, although he might be deemed to have waived the objection by answering, so that he could not raise it at the trial, or by pleading or on appeal.

So, too, if another action were pending between the same parties for the same cause, the omission to plead it would be a waiver of the objection so far as the pleadings were concerned; but the court, to prevent the incongruity of two contrary judgments on the same state of facts, might stay the proceedings in one suit until the other should be decided. So if there were a clear defect of parties, the defect would be waived by not pleading it: but that waiver would not prevent the court from exercising its discretionary power in a proper case and allowing the defendant to amend his pleadings, or staying the judgment until the plaintiff should bring in proper parties. It may be that such a power

Coit agt. Coit.

should be exercised · cautiously, but still it may be necessary; as, if one legatee claimed the whole fund from an insolvent executor, and it should appear that others were entitled to part of it, the court would not allow the rights of the absent persons to be destroyed by the omission of the executor; and yet it would not allow him to raise the objection by pleading after he had once waived it.

The case of Wood vs. Wood, in 8 *Wend.* and other cases show that the objection might, before the Code, be raised at any time; and that it is an answer to a motion of the plaintiff for relief.

Here the plaintiff applies to the court for relief, and it is a peculiarly discreet use of the power of the court to refuse the relief, until security shall be given which shall protect the defendant from the unnecessary costs caused by the plaintiff's repeated defaults.

The order below should be affirmed, but may be so modified that the plaintiff's motion to open the default be granted on her paying $10 costs and amending her complaint, and appearing by a responsible next friend, whose sufficiency shall be approved of by one of the justices of the court on notice to the defendant's attorney.

NOTE.—The opinion delivered by EDMONDS, Justice, at special term, in this case is published in 4 *How. Pr. R.* 232. And the general term, in the foregoing well considered opinion having affirmed that decision, it may now be considered, in the first judicial district at least, as the settled practice. From the Reporter's knowledge of the practice in other districts upon this question, it is believed to be generally the same.