## HIRAM P. HASTINGS *v.* WILLIAM McKINLEY and another.

Where a suit is commenced by a wife as sole plaintiff, an objection that she is legally incapable of maintaining the suit by reason of her coverture, must be taken by demurrer or by answer.

Where the plaintiff has become such by being substituted for the person in whose name the action was commenced, and who had assigned the claim to him, *pendente lite,* and it is claimed that a new defence has arisen, namely, that the plaintiff's title to the thing in action is void, on the ground of maintenance; the new defence must be set up by a supplemental answer under the code, § 177.

Such supplemental answer would be allowed as one of the conditions of permitting the new plaintiff to be substituted ; or if such a defence were clearly well founded and made apparent by the plaintiff himself, it might be a sufficient reason for refusing to permit the substitution.

It is not now necessary to inquire whether an assignment passes the legal title so as to authorize the assignee to sue in his own name. Whether his title be legal or equitable, if he have the whole interest, he may maintain the action.

No *necessity* exists for a *written* assignment of a note not negotiable or agreement to pay money, where there is an actual transfer and delivery of the instrument, with intent to vest the interest in the transferee, so that the court can see that the whole equitable interest and property in the money agreed to be paid, is in the plaintiff.

Where a suit was commenced by a wife upon an agreement for the payment of moneys alleged in the complaint to be her separate property, which allegation was denied in the answer, and the claim was assigned by her, with the consent of her husband, to a new plaintiff, who was substituted for her upon the record; it was *held,* that her husband was a competent witness in behalf of the new plaintiff upon the trial.

THIS suit was tried twice. Upon the first trial, the defendant had a verdict and judgment. The plaintiff appealed to the general term ; but pending the appeal, the plaintiff moved, at special term, to set aside the verdict for certain alleged misconduct on the part of one of the attorneys. The court, on this motion, (the affidavits being conflicting,) ordered that the disposition of the motion await the termination of the appeal, and that if a new trial should not be ordered upon the appeal, an issue be framed for the trial by a jury of the matters alleged as grounds for setting aside the verdict, which order was afterwards affirmed at general term.

The appeal being thereupon brought to a hearing at the general term, upon a *case* instead of a *bill of exceptions*, and preliminary questions then arising as to the right of a party to move for a new trial upon questions of fact on such *appeal* under the code as passed in 1849, an opinion was delivered respecting the nature of an appeal, and the respective offices of a *case* and *bill of exceptions*, which may be found in 3 Code Reporter, p. 10.

But without waiting for the hearing of the appeal, the counsel for the defendant consented that the verdict be set aside and a new trial ordered. The cause was transferred to other attorneys, and upon the second trial, the plaintiff had a verdict and judgment; from which judgment the defendants appealed. Upon this appeal, the questions arose which appear in the opinion, upon the further facts therein stated.

*Elijah Ward*, for the defendants.

*Hiram P. Hastings*, plaintiff in person.

By the Court. Woodruff, J.—This action was commenced in the month of February, 1849, in the name of Manuello Montejo de Castellanos, the wife of Pedro de Castellanos, as sole plaintiff, and was founded upon an instrument in writing, dated September 1st, 1848, whereby the defendants, for value received, promised to pay to the order of Messrs. Broint & Brugues the sum of five hundred dollars as soon as certain two cases of merchandise (therein described) should be delivered or tendered to the agents of the defendants at Havana.

On the 2d September, 1848, the payees endorsed the instrument in blank, as follows : " Pay the within to M. Broint, M. Brugues," and delivered the same thus endorsed.

The complaint avers that the agreement was procured with the separate funds of the wife ; that she has a separate property not belonging to her husband, and that the demand in question belongs exclusively to her separate estate.

The answer, so far as it is material to the consideration of

this appeal, consisted of a denial of the plaintiff's title to the instrument, and a denial that she had any "separate property from her husband."

On the 21st of May, 1849, the then plaintiff executed an assignment, whereby, in consideration of $500, she transferred the agreement to the present plaintiff, Hastings, who was her attorney in the action, and her husband, Pedro de Castellanos, subjoined and subscribed his consent to such transfer; and thereupon an order of the court was obtained, entered May 31, 1849, under § 101 of the code then in force, (§ 121 of the code of 1849,) by which the present plaintiff (Hastings) was substituted as the plaintiff in the action.

On the trial, the husband of the former plaintiff was called as a witness, and was objected to by the defendants as incompetent. The objection was overruled, and the defendants excepted to the decision.

The exception, together with the motion for a nonsuit, present all the grounds which were urged by the defendants' counsel on the argument of the appeal for reversing the judgment.

*First.* It is insisted by the defendants that a married woman could not sue without joining a *next friend;* and that the substitution of a person competent to sue, though made by order of the court before the trial, did not cure this defect, which was apparent upon the face of the complaint.

Section 127 of the code of 1848, (§ 148 of code of 1849,) provides that certain objections shall be deemed waived by the defendant if not taken by demurrer or answer. Among these are, "that the plaintiff has not legal capacity to sue," and "that there is a defect of parties, plaintiff or defendant."

It appears to me that this section is conclusive against the defendants upon this point. If the plaintiff had not legal capacity to sue, that defect was apparent on the face of the complaint; it is one of the grounds of demurrer expressly named in § 122 (§ 144 of amended code). The defendant might have demurred. By § 126, (147 amended code,) if the defects were

not sufficiently apparent on the face of the complaint, the defendant might have set it up in his answer ; he has done neither, and I see not how the express *statutory* conclusion, compulsory in its terms, that "he shall be deemed to have waived the same," can be avoided.

The case of *Coit* v. *Coit*, 2 Code R. 94, cited by the defendants in opposition to this view, without noticing at all the provisions of §127, (148,) briefly and without argument states that the objection may be taken *at any time*, on the authority of *Wood* v. *Wood*, 8 Wend. 357. But in that case, the question whether the wife could sue without a next friend, was raised on a motion for alimony founded on the bill of complaint, and before either demurrer or answer, so that it was wholly unnecessary to consider the effect of an answer which did not take the objection, and going into proofs upon the issues actually raised. I am, however, not disposed at present to question the correctness of the observation made in that case, for if we were to concede that the *dicta* in *Wood* v. *Wood* are to be deemed authority on the point, I must still say that the code has changed the rule in that respect; and that now, if the defendant would object that the plaintiff is legally incapable of continuing her suit by reason of her coverture, he must take his objection by demurrer or by answer.       *       *       *       *

*Second.* In connection with the point that the substitution of Hastings as plaintiff, did not cure the defect, it is urged by the defendant that the transfer being made, *pendente lite*, to the attorney on the record, was void, on the ground of maintenance. On this point it is only necessary to say, that according to the views above suggested, there was *no* defect to be cured ; and second, if a new defence of this description arose, *pendente lite*, the defendant should have set it up by supplemental answer, under § 152 (§ 177 of amended code of 1849). This he would have been permitted to do, as one of the conditions of allowing the new plaintiff to be substituted ; or if such a defence was *clearly* well founded, and appeared by the *plaintiff's* own showing, it might have been a sufficient reason why no substitution should be permitted.

We do not intend to intimate that upon any facts appearing on the face of the paper, or that were shown on the trial, there is any thing in this supposed defence ; but we are clear that, it not having been set up as a defence, the defendant cannot now urge the objection.

*Third.* The defendant urges that the agreement upon which the suit is brought, is not a negotiable note, and is not therefore assignable by the endorsement of the payee in blank.

Whether the note was negotiable or not, we deem the endorsement quite sufficient to pass the interest of the payees. It is not now, as formerly, necessary to inquire whether an assignment passes the legal title, so as to entitle the assignee to sue in his own name. Whether his title be legal or equitable, if he have the *whole* interest, he may maintain the action. It is no new proposition that the mere endorsement *by* the payee of a note *not* negotiable with his own *name* only, is an authority to the holder to fill up the endorsement by an assignment to himself. Indeed, I doubt the *necessity* of any *written* assignment where there is an actual transfer and delivery of the thing in action, with intent to vest the interest in the transferree, so that the court can see that the whole equitable interest and property in the money agreed to be paid is in the plaintiff.

At all events, I am of opinion that the endorsement in this case, in connection with the proof of interest, was quite sufficient. The only remaining objection to this judgment, which was urged by the defendants' counsel on the argument, is, that the husband of the former plaintiff ought not to have been received as a witness in support of the claim made herein, and that if his testimony be rejected, there is no proof that the cause of action was at any time the separate property of his wife.

I can perceive, with the defendants' counsel, that many of the liberal provisions of our code are liable to abuse, and none, perhaps, more so, than § 101, (§ 121 of code of 1849,) under which the substitution of the present plaintiff was made.

There will always be a strong temptation to a plaintiff, who fears that he cannot recover for want of sufficient proof, to

seek out a purchaser, dispose of his cause of action, and then suffer himself to be examined as a witness. It is true, by § 399, code of 1849, if the assignment appears to have been made for such a purpose, the assignor is not permitted to testify; but when a wrong is attempted, the party will seldom be scrupulous in the means he employs. Although the suggestion that human ingenuity, combined with human depravity, may abuse the law, may be urged as a reason for an *alteration* of the law, and has indeed so far prevailed as to induce some alteration, by the code as amended in 1851, the code, as it existed at the time of the trial, warranted the examination of an assignor who had no interest in the event of the suit so direct that it could be said to be prosecuted for his benefit, and in this particular no change has been since made.

If this be so, then the wife of the witness was herself competent to testify for the present plaintiff. She had parted with all her interest in the subject matter in controversy. She could neither gain nor lose by the verdict, nor by the judgment to be rendered thereon. She was not even interested in the question. If the answer did at all raise the question whether she had any separate property, such an issue was in no wise material beyond its application to this particular property; it was wholly immaterial whether she had any other separate property than this she had assigned. The verdict or judgment could never be given in evidence for her on any question touching other separate property. So that there being no evidence that the assignment was made for the purpose of making either her or her husband a witness, she must, I think, have been permitted to testify, had she herself been offered. It necessarily follows that her husband was competent—if she could testify, *he might*. No then existing right nor interest of hers was in question.

But it is said, that having been plaintiff herself, the issue to be tried was upon the question of property in the wife at the *date of the issue*. If this is conceded, it is nevertheless true, · that at the time of trial she had ceased to have any interest in the issue, and she was no longer a party to the record. Entertain-

ing this view, it is not material to inquire whether the answer did or did not put the question, whether the note was her separate estate, in issue.

The proof, being competent, established the fact alleged in the complaint. The judgment must be affirmed, with costs.