Judge Carr,
delivered his opinion.
This is a bill filed by Mrs. Almond, by E. Cox, her next friend, against her husband, for alimony. It states, *663 that she brought him seven or eight negroes, which have all been wasted by him in riot and drink: that her brother gave her a girl after her marriage, who has had three children: that her husband treated her with great cruelty, beating her in his drunken fits, which became so frequent and intolerable, that she was at length obliged to leave him, and throw herself upon the charity of her son: that when she went, her husband told her to take her present along, meaning the woman: that the woman and- her children soon after joined her at her son’s: that her husband, though he had disclaimed any right in the property, came to her son’s, took the children, and sold them out of the State; saying, at the time, that he left the mother at her free disposal; but, he has since brought suit against the said Cox for her, and recovered a judgment for her at law, which he will enforce, unless prevented. The bill prays, that the Court would decree her a separate maintenance, that she may be quieted in the possession of the slave, and the judgment injoined.
The answer denies, that the defendant ever treated his wife amiss: that she became morose and ill-tempered, and at length, without cause, left him: that he was anxious for her return, and solicited her often to come back to him: that she did so, and remained with him from 1815 to 1818,. when she again, without cause, left him: that ever since her last separation, he has been entirely willing, and still is so, to receive her back; and while she behaves as a wife, will treat her with the kindness due to one: -that as she has voluntarily separated from him, she has no right to a separate maintenance; and he submits, whether, by the law of the land, and the eonsitution of Courts of Equity, that Court has jurisdiction of the case, where there are no articles of separation between the parties, no divorce, nor any trust fund for the use of the wife, the disposition of which the Court might control; and where, by their interpo» sition, the Court would take from him the only means of discharging the claims of his creditors; the funds tied up *664 by his wife being by far the greater part of what he is worth.
There is evidence in the record of the defendant’s bad habits: that he is addicted to drinking, beyond the hope of reform: that he has treated his wife badly, beating and abusing her in his drunken frolics; and that she cannot, in the opinion of the witnesses, live in peace and safety with him; also, that he has wasted his whole property, that now in contest in this suit excepted; and that the negro woman is dead. There certainly is nothing like an agreement between the parties for living separately; nor any arrangement as to their property in case of separation. It is proved by four witnesses, that when the defendant went to take, and did take, the children forcibly from Cox, he said he left their mother for his wife’s use. Some say he said he had no claim to her; others, that she was free to dispose of her as she pleased. But, there is nothing like a contract; nothing in such a form, that equity could act upon it under the idea of executing an agreement. The Chancellor dissolved the injunction, and dismissed the bill.
Can we say that he erred ? In England, matters of this kind belonged principally to the Ecclesiastical jurisdiction. It was only incidentally, that Courts of Equity acted upon it. Where there have been articles of separation between man and wife, by which she is allowed so much for her separate maintenance, there Equity will, at her suit, carry these articles into execution, [while the separation continues; or where a woman applies to the Court upon a supplicavit, for security of the peace against her husband, and it is necessary that she should live apart; as incidental to that, the Chancellor will allow her a separate maintenance.
jIn Head v. Head, 3 Atk. 295, Lord Hardwidee says, j“ The principal grounds for bills of this kind, are an I agreement for maintenance, or a trust for this purpose, Í and in either of these cases, the Court will entertain a suit for alimony and maintenance; and even after sentence in *665 (he Ecclesiastical Court for it, when the husband, in order to evade it, is going out of the kingdom, will, upon a bill filed by the wife, grant a ne exeat regno.”
The same case afterwards came before the Court again. 3 Atk. 547. Sir Francis Head had written to his wife’s father, saying, “I am willing to send her 1001. and no more, between this and Christmas, and to continue her such quarterly payments, when it shall best suit my convenience, so long as we shall continue separate.” Lady Head brought her bill for execution of this, as an agreement for separate maintenance, and prayed liberty to live separately, and that the Court would decree payment of the money. Lord Ilardwicke said, “ as to the liberty prayed, it is not in the power of the Court to decree it, and I do not find that this Court ever has made a decree for establishing a perpetual separation between man and wife, or to compel a husband to pay a separate maintenance to his wife, unless upon an agreement between them, and even upon this, unwillingly.” He went on to decide that the letter of the defendant was not an agreement to continue during their lives, but merely for her maintenance during an occasional absence, and Sir Francis having, by his answer, offered to receive her again. The Chancellor decreed only the arrearages of the maintenance, and that he should receive and treat her as a wife; and if she did not return within a month, the allowance should cease: But if she returned, and the defendant refused to receive her, and maintain and treat her as a wife, the maintenance should continue.
In Ball v. Montgomery, 2 Ves. jr. 195, Lord Boslyn says, “It is contrary to the established doctrine, that a married woman should be a plaintiff in this Court, for a separate maintenance.”
“ I take it to be now the established law, that no Court, not even the Ecclesiastical Court, has any original jurisdiction to give a wife separate maintenance. It is always as incidental to some other matter, that she becomes en *666 titled to a separate provision. If she applies to this Court upon a supplicavit for security of the peace against her husband, and it is necessary that she' should live apart; as incidental to that, the Chancellor will allow her separate maintenance. So, in the Ecclesiastical Court, if it is necessary for a divorce a mensa et thoropropter scevitiamP There are other cases which say, that subsistence has been provided for the wife by this Court, either where the husband has turned her out of doors, or by ill treatment obliged her to leave his house, or has quitted the kingdom, leaving her destitute. See Duncan v. Duncan, 19 Ves. 394, and the cases there cited. See also 1 Fonb. Eq. 104, a learned note, where all the cases are brought together. This seems to be a brief view of the law in England.
I find no case with us, in which the subject has been before this Court. Having no Ecclesiastical Tribunal, the powers of that Court seem to have been considered as vesting originally in the old General Court. From thence, some of them have been distributed to other Courts, as they were branched out. The power over the probat of wills, executors and administrators, and distributions, &c. were given to the District, Superior, County and Corporation Courts. I know of no law which has given to any Court the trial of matrimonial causes, except so far as relates to incestuous marriages; as to which, a power is given to the Court of Chancery to annul them. Judge Tucker, in his Blackstone, 3d vol. 94, says, “With respect to suits for alimony after a divorce a mensa et thoro, as there is no Court in Virginia which possesses jurisdiction in such cases, so until there is such Court, there can be no room for suits of this nature; unless, perhaps, the High Court of Chancery should sustain them as incidental to its equitable jurisdiction.”
The suit before us is not after a divorce, but a voluntary separation; if that may be called voluntary, which seems to have been forced upon the wife by ill treatment. I believe that in practice, the County Courts, sitting as Courts *667 of Equity, have assumed the power of giving separate maintenance in cases of separation; but, by what rule they have been regulated, I know not. The jurisdiction was sustained by the Chancellor of the Richmond Chancery Court, in Purcell v. Purcell, 4 Hen. &. Munf. 507; and the reasoning of the Chancellor on the point of jurisdiction seems to me sound. If there be a contract for separation, it is conceded on all hands, that equity might, in proper cases, enforce that contract. But, suppose a husband to turn his wife out of doors, or to treat her so cruelly that she cannot possibly live with him; suppose him to persevere in refusing to take her back, or to provide a cent to feed and clothe her. Surely, in a civilized country, there must be some tribunal to which she may resort. She cannot be out of the protection of the law; an outcast, dependent on the charity of the world, while her husband may have thousands, and she may have brought him all. I would, in such cases, unquestionably, stretch out the arm of Chancery, to save and protect her.
But, assuming jurisdiction, I should be cautious to regulate it by the rules which have been established elsewhere. If the parties have made an agreement, that should be the standard; if not, I would take the practice of the Court in analogous cases. There has certainly been no contract here. I find it laid down, that where a separation has taken place, and the wife sues for a support, if the husband, in his answer, states that she left him of her own accord, that he has offered to receive her, and is willing to receive and treat her well, the Court refuse the maintenance. In the answer before us, there is an entire willingness expressed, to receive her back and treat her as a wife. But, though this be a general rule, there must be exceptions to it. Suppose it fully proved to the Court, that the husband was in the constant habit of intoxication; that when drunk, he was á madman, and his anger particularly pointed at his wife. Surely, the Court would not, because of the offer to take her back, refuse a support, and thus force her either to ha *668 zard her life, or to depend on charity. I do not mean to say that this is such a case; but, I put it to test the principle.
I have considered the case thus much at large, because it is entirely new in this Court. There is a specific objection to the proceeding here, on which I think the judgment of the Court below must be sustained. The demand is not for alimonj7, or maintenance generally; but, that a judgment which- the husband has recovered for a specific piece of property, (a negro woman,) shall be injoined, and the wife quieted in the possession of that woman. Now, the claim of the wife for alimony is a personal claim on the husband; she has no lien on any specific property, without an agreement. She can no more, therefore, ask the Court to assign her this negro, or that tract of land, than a credi~ tor of the husband could come into Court and ask such assignment; which we know, without a particular lien, could not be done.
Under this view of the case, I think the injunction was properly dissolved, and the bill dismissed.
The other Judges concurred, and the decree was affirmed. *