MARTHA JANE JOHNSON, Complainant, Appellee,

*vs.*

LEMUEL L. JOHNSON, Defendant, Appellant.

APPEAL IN EQUITY FROM WAUKESHA CIRCUIT COURT.

It is the duty of a party obtaining a decree in the court below, to be prepared to sustain the same on appeal, and for that purpose to preserve the evidence on which it is based.

The verdict of a jury upon a feigned issue out of chancery, is to enlighten the conscience of the chancellor, and is not conclusive.

When the bill is so defective as to fail in setting out a legal cause for divorce, no amount of evidence, nor the verdict of a jury, will warrant a decree upon it.

The general charge of "cruel and inhuman treatment," is not sufficient, when the facts and details specified as constituting the charge, fall short of sustaining it.

What facts do not sustain a charge of cruel and inhuman treatment. *See case.*

Cruel and inhuman treatment in the sense in which that phrase is used in the statute, is such as renders the living and cohabiting together unsafe.

THIS was a bill filed in the Waukesha Circuit Court for a divorce and alimony. The following are the material statements of the bill:

"She further represents, as aforesaid, that soon after their marriage, and after he had returned from Michigan as aforesaid, he assured her he had been to Michigan, and disposed of all his lands and property there, so that she should never have any of his estate, and continued to repeat the same story to her very often since; but she is well advised and believes it is conveyed, if at all, in trust for himself, and not otherwise, and that he has the control in fact of the same yet. She further represents, as aforesaid, that they had not been married two weeks before her husband began to use cruel and tantalizing language to her, to treat her roughly, boasting of having secured his property from her, and reminding her of the poverty of her parents and of her own helplessness, and derisively asserting that her marriage was a spurious one and a sham, and clandestinely took her marriage certificate from her, and made no suitable provision for her support and that of her child, neither before nor since they commenced housekeeping: that he has kept her very scantily

clothed since their housekeeping, to wit : from the last of May, 1852 ; that they have not had a well, or cellar, or rain cistern in or about the premises, nor a cupboard, bureau or shelf about the house, nor even a box into which she could put her crockery or clothing, scanty as they are ; the only cabinet furniture they have in the house is a few chairs, a candle-stand and table, which her husband says cost him $3.50, and therefore will not permit her to do her ironing of clothes on it, because it will injure it, as he says, and compels her to do most of such work on a low water-pail bench, only about one foot high. She further represents, as aforesaid, that he neither clothes her decently or comfortably, has never furnished her with a comfortable bed and furniture ; that they have but one thing called a bed in the house, and that a straw bed, with scanty covering ; that she has been compelled to sleep on a straw bed very scantily supplied ever since they kept house ; that she has been twice locked out of her house by him, once for two days ; and on one occasion she had the key to the house, and tried to prevail upon him to permit her to keep it, as he was going away for how long a time she did not know, and he refused and wrenched it out of her hands with violence and anger ; that he does not, but refuses, to supply her with suitable provisions ; seldom allows or furnishes her milk for tea or coffee ; that three or four days at a time she has had only musty bread made of musty meal or flour, with no meat or butter, and for the like period of time has lived on such bread with only salt and potatoes and some pickled beets ; and that when she begs of him to supply her with better fare, as she often does, he will only remind her of the poverty of her parents and of her humble origin, and refuses her the society of her parents, brothers and sisters, and abuses them, and sometimes turns them out of the house if they are detected in furnishing her with such little luxuries as they fain would bestow, and such as her comfort demands, whether in sickness or health. And your petitioner further shows, as aforesaid, that her condition in life is intolerable, and too deplorable to be borne by her with her feeble health and slender constitution. And your petitioner further shows, as aforesaid, that she has good reason to believe, and does believe, that her said husband has at his control abundance of wealth ; also that the title of the said Brookfield farm is yet in

him, notwithstanding his declarations to the contrary, but that he threatens to turn her father off said premises, and that he will the moment he perceives it necessary for the accomplishment of his object, in distressing and injuring your petitioner, as she believes, attempt to convey, or in some way if possible put it out of the reach of your petitioner and of her infant child for their support, unless your honor shall grant an injunction to enjoin him from so doing, which she, by her said next friend, respectfully prays, until her rights are ascertained and secured by a decree of this court, in tender consideration of the foregoing facts and statement, if they shall be proved to be substantially true, which your petitioner, by her said next friend, prays may be inquired into ; and she prays, as aforesaid, that a subpœna may issue out of this court, requiring the said defendant to answer, &c., and that a decree from the bands of matrimony may be made by your honor, between your petitioner, Martha Jane, and her said husband, and that she be decreed such reasonable alimony as the condition of his property will warrant, and in the meantime that a reasonable allowance may be ordered for her support, and for the conducting of this cause, as she has no pecuniary means of her own, or at her disposal, and that due provision may be made for her said infant child, and for such other relief as the court shall deem meet to grant, and as in duty bound she will ever pray."

An injunction was awarded according to the prayer of the bill.

The defendant answered, denying specifically all the material charges in the bill, and alleged that there was a conspiracy between the complainant and her immediate relatives to compel him to convey his property to her or them, and because he refused to do so, she left his bed and board. The answer is very full and explicit in its details, but of no importance so far as regards the law of the case.

On the 30th November, 1854, a jury being demanded by the defendant, it was, on his motion, ordered by the court that the issue to be tried by the jury be, " whether the treatment by the defendant of the complainant between the 9th day of March, 1851, and the 12th day of October, 1852, was cruel and inhu-

man." And it was also ordered that the complainant have the affirmative of the issue.

At the same term there was a jury trial, and the jury being unable to agree, were discharged.

At the March term, 1855, another jury was impanneled, who returned a verdict finding the issue in the affirmative.

Whereupon the Circuit Court made a decree dissolving the bands of matrimony between the parties; and ordered a reference to a master to take testimony as to number, age and sex of the children, the fruits of the marriage, or legitimatized thereby, and upon any matters relating to the proper care and custody of such children; and the amount and kind of the property of the defendant as well as the complainant; and report to the court; also that the defendant pay to the complainant $20 per month thereafter until further order, and that the complainant have the care of the children in the meantime.

None of the testimony produced before the jury was preserved or returned.

From this decree the defendant appealed.

*Yates*, for the complainant.

*Downer*, for the defendant.

*By the Court*, COLE, J.   This was an application on the part of the appellee, for a divorce from the bond of matrimony. The ground of the application appears to be cruel and inhuman treatment by her husband, based upon *subdivision 5, of section 9, chap. 79, R. S.;* and upon *subdivision 3, section 10,* of the same chapter, which latter provision is made a substantive cause of divorce, by *section 11,* whenever, in the opinion of the court, the circumstances of the case are such that it will be discreet and proper to grant it.

The appellee, in the bill of complaint, after unnecessarily detailing at some length her relations to the appellant for some two years before her marriage to him, giving publicity to events in their previous history, that, to say the least, are quite impertinent to this issue, and which it would seem both parties ought to be equally interested in burying in oblivion, goes on

to specify certain instances of unkind, cruel and inhuman con-
duct on the part of her husband. She represents in her bill
of complaint that, soon after marriage, her husband began to
use cruel and tantalizing language to her; to treat her roughly,
boasting of having secured his property from her; and reminding
her of the poverty of her parents, and of her own helplessness;
and derisively asserting that their marriage was a spurious one
and a sham; clandestinely taking her marriage certificate from
her; and making no suitable provision for her support, and that
of her child; that he kept her scantily clothed; that they had
no well, cellar or rain cistern; nor a cupboard, bureau or shelf
about the house; nor even a box into which she could put
crockery or clothing, scanty as hers was; that the only cabinet
furniture in the house was a few chairs, a candle stand, and
table, which her husband said cost $3.50, and therefore would
not permit her to do her ironing upon it, because it would be
injured; but compelled her to do most of such work upon a
low water-pail bench, only about a foot high; that her husband
neither clothed her decently or comfortably; has never fur-
nished her with a comfortable bed and furniture; that they had
but one thing called a bed in the house, and that a straw bed,
with scanty covering; that she has been compelled to sleep on
a straw bed very scantily supplied ever since they kept house;
that she has been twice locked out of her house by him for two
days; and that on one occasion she had the key to the house,
and tried to prevail upon him to permit her to keep it, as he
was going away, but that he would not, but wrenched it out of
her hands with violence and anger; that he does not, but refuses,
to supply her with suitable provisions, seldom allowing or fur-
nishing her with milk for tea or coffee; that for three or four
days at a time she had only musty bread made of musty flour
or meal, with no meat or butter; for the like period has lived
on such bread, with only salt and potatoes, and some pickled
beets; that he has control of an abundance of wealth; and also
refuses her the society of her parents, brothers and sisters.

The above constitute the material allegations of the bill, upon
which a divorce must be granted, if granted at all.

To the bill, the appellant filed an answer, denying, under
oath, its main allegations, and charging his wife with unkind

and unbecoming conduct towards him. A replication was put in; and on motion of the appellant, a feigned issue was ordered by the court to determine the question as to whether the treatment of the complainant between the 9th day of March, 1851, and the 12th day of October, 1852, was cruel and inhuman. On the second trial, the jury found this issue in the affirmative, and thereupon the Circuit Court decreed a dissolution of the marriage contract between the parties.

Upon an examination of the record, it is found that but a small part of the testimony given on the trial below has been sent up to this court; but still, it was suggested by the counsel for the appellee, that we should presume that the finding of the jury was warranted by the evidence before them, and that it devolves upon the party assailing the decree here, to show that it was erroneous, and not supported by the evidence. Perhaps it is proper to remark, in answer to this suggestion, that the hearing of an appeal in this court is a review, by a distinct and superior tribunal, of a cause upon the same pleadings and proofs as the cause was heard upon in the court below; and this applies as well to causes where a feigned issue was ordered, as to other appeal cases. It is therefore absolutely essential that all the testimony used in the court below should be returned to this court, and ordinarily, a party interested in the testimony will see that it is properly taken and certified to this court.

Did there exist no other objection to affirming this decree, except the one noticed, that there is no testimony before us to sustain it, that would, of itself, constitute an insuperable difficulty, but there are others equally fatal.

And, first, it will be conceded that when a bill is essentially defective in substance, no relief can be granted upon it, whatever may be the character of the proof; for the reason that no facts are properly in issue unless charged in the bill; and of course no proof is competent except such as is pertinent to the issue joined. 2 *Wis.* 552; 1 *Hawks'* (*N. C.*) *R.* 359; 11 *Peters*, 229; 6 *Conn. R.* 37; 1 *J. C. R.* 184; *Story's Eq. Plea.*, § 257. The reason assigned for this rule is such as to commend it to the good sense of every one, which is, " That the defendant may be apprised by the bill what the suggestions and allegations are,

against which he is to prepare his defence." *Story's Eq. Plea.*, § 257.

If the allegations of this bill, to which we have referred, be examined, they will be found, with the most favorable view that can be taken of them for the complainant, not to constitute a sufficient ground of divorce under our statute. The court is authorized to grant a divorce *a vinculo,*—by *subdivision* 5, *sec.* 9,— "When the treatment of the wife by the husband has been cruel and inhuman, whether practiced by using personal violence or by any other means;" and by *sec.* 11, discretionary power is given the court to grant it for the causes specified in *subdivision* 3 *of sec.* 10, "On the complaint of the wife, when the husband, being of suffiicent ability, shall refuse or neglect to provide for her, or where his conduct towards her is such as may render it unsafe and improper for her to live with him." The conduct spoken of in the latter clause of this subdivision, which would render it improper and unsafe for the wife to live with the husband, is doubtless such conduct as would constitute cruel and inhuman treatment under *subdivision* 5, *sect.* 9. The two causes do not appear to be distinguishable from each other. 2 *Kent,* 126; *Mason vs. Mason,* 1 *Edw. Ch. R.* 278; 2 *Val. Arn. Law, Jan. p.* 193. Now, although courts have manifested a great unwillingness against defining affirmatively cruelty, as that term is employed in statutes substantially like our own; yet a slight examination of the authorities will show that the facts charged and set forth in this bill, do not constitute cruelty in a legal sense, within the most liberal definition of the term. Cruelty, as used in these statutes, is considered to have very much the sense of *sacritia* of the civil and ecclesiastical law. And hence it is said that to justify a court in interfering to dissolve the marriage relation, grave and weighty causes must exist, which show that the duties of the married life cannot be discharged. 2 *Kent,* 126; *Bishop on M. & D. chap.* 23; *Barrere vs. Barrree,* 4 *J. Ch. R.* 187; *Mason vs. Mason, supra; Evans vs. Evans,* 1 *Hagg. R.* 35; *Holden vs. Holden, ib.* 453; *D'Aguilar vs. D'Aguilar,* 1 *Hagg. R.* 773; *Harris vs. Harris,* 2 *id.* 376. Abusive and opprobrious language, which wounds the feelings merely, unaccompanied with any bodily injuries, actual or menaced, is not considered a ground for a divorce. The allegations of the com-

plainant that the defendant used cruel and tantalizing language to her, treated her roughly, boasted of having secured his property from her, reminded her of the poverty of her parents and asserted that their marriage was a shave, however unfeeling and unbecoming an honorable and affectionate husband, is not cruel and inhuman treatment; nor is it such conduct towards her as to render it unsafe and improper for her to cohabit with him. The same observations apply to the other acts of alleged cruelty specified by her, such as compelling her to do her ironing upon a low water-pail bench, taking the key of the house from her, and locking her out of the house. It is true, had she averred that her husband had locked her out of the house willfully and wantonly for two days, without her having any suitable place to stay in the meantime, and under circumstances to endanger her health and life, it would have clearly been an act of legal cruelty towards her. But nothing of the kind is averred. The allegation is too general and indefinite as it now stands, to support a charge of cruelty.

We do not know but the complainant intended placing her application for a divorce upon another ground, and to bring it within the case mentioned in the first clause of *subdivision 3, sec.* 10. By that clause it is made a cause for a divorce " when the husband, being of sufficient ability, refuses or neglects to provide for his wife." If so, her bill falls far short of setting forth such a case. Her husband has not refused or neglected to provide for her, but he has not made such provisions for her comfort as perhaps he might, and in duty ought to have made. It seems they have been keeping house some four months. The house in which they live was a log one, and with few of the conveniences for housekeeping about it; besides, it was poorly provided with household furniture, bedding, &c. The complainant alleges that she has been scantily supplied with clothing, and has at times had to live upon musty bread. Being disposed to take the most favorable view for the complainant of all these charges of unkindness and want of attention to her happiness and comfort upon the part of her husband, he being able to make ample provisions for his family ; yet we are compelled to say, that while such conduct reflects no credit upon his character,

Johnson vs. Johnson.

it will not justify the interposition of the court in granting a divorce.

We have all along considered this cause upon the case made by the bill, without regard to the answer, or anything that might be urged in defence or palliation of the husband's conduct, for the reason that we deem the bill as essentially and fatally defective in setting forth a cause of divorce.

The decree of the Circuit Court must therefore be reversed, and the bill of complaint dismissed.