EMILY D. WORD, plaintiff in error, vs. JAMES WORD, defendant in error.

In a libel for divorce, founded on desertion, evidence going to show, that the desertion was not "willful," or, that the plaintiff was consenting thereto, is admissible for the defendant.

Divorce, in Coweta Superior Court.    Tried before Judge HAMMOND, March Term, 1859.

This was a libel for divorce *a vinculo matrimonii* by James Word against Emily D. Word, his wife, on the ground of willful and continued desertion, on her part, for three years.

On the trial plaintiff proved the marriage, which took place in December, 1849; that several months after the marriage his wife left his house, and went to and resided with her mother, and that she had been living with her mother for more than three years before the commencement of this suit.    Here plaintiff closed.

Defendant proved by *John H. Newell*, a witness introduced by her, that the next day after she came back to her mother's, plaintiff came there and asked for her, saying that he wished to see her; witness told him that he could not see her, that Mrs. Word had requested him to say this to him (Word) in case he should call to see her    Witness at this time, charged plaintiff with treating his wife worse than he would have treated a dog, and he did not deny it.    Mrs. Word was witness's sister; her general health was very bad.    Word once agreed that she might come and stay with her mother while sick, and in a day or two took her home, when she was hardly able to travel.    The night before defendant came back to her mother's, her negroes came there and remained at her mother's; her mother sent a negro woman to wait on her, and plaintiff put her in the field and left his wife, Mrs. Word, to do the cooking and washing, when her health was such that she was not able to do such work.

Defendant, then offered to read the depositions of *Mrs.*

*Sarah P. Wynne*, taken by commission, to the effect "that in a conversation with plaintiff, in the summer of the year in which the parties separated, he said in an angry manner that he never intended that his wife should live with him again if she was the last woman in the world; that he had looked at her many times, and thought that it was well for her that she was so afflicted, and looked so pitiful, or he would have given her the hickory. Plaintiff became angry when the subject was first named, and continued so during the whole conversation. She told Mrs. Word of this conversation in the fall of the same year."

To *Cross Interrogatories*, she answered, "That she had had conversations with Mrs. Word, who stated to her, that she could not live with plaintiff that he treated her so unkindly in her afflictions; that she never heard Mr. Word say that her husband had not mistreated, but heard her often say that he was unkind to her, and she could not live with him."

The Court rejected these depositions, and counsel for defendant excepted.

Defendant then proposed to prove by the depositions of *Rebecca H. Glass*, that in the summer of the next year after Word and his wife separated, in a conversation with plaintiff, respecting his wife, she, the witness, told him that she thought he ought to see his wife and make friends, and try to live together again, and he replied in an angry manner, that he never wanted witness, or any person, to name that subject to him again, for he could neither be hired or persuaded to live with her again, and if she were to live with him again, he would not treat her as well as he had done. Plaintiff appeared very angry. Witness informed Mrs. Word of this conversation.

The Court rejected the evidence, and defendant excepted.

The jury found for the plaintiff, and rendered a verdict for a total divorce, but were silent on the subject of the cost. The counsel for defendant insisted that she was not liable

for cost, and that judgment could not be entered up against her for the same—the verdict being silent on the subject, and she being a *feme covert*. The Court held otherwise, and ordered judgment to be entered up against defendant for the costs. To which decision defendant excepted.

Robt. W. Simms, for plaintiff in error.

Buchanan, *contra.*

*By the Court.*—Benning J. delivering the opinion.

Did the Court err in rejecting the testimony of Mrs. Wynn and that of Mrs. Glass? We think so.

The plaintiff had to make out a case of " willful and continued desertion" of him, by the defendant, "for the term of three years." *Cobb's Dig.* 226. The testimony of these two ladies, was such, that it might have satisfied the jury, that the defendant's desertion of the plaintiff, was not " willful ;" at least was not willful, for the time after the first, or second, year of the desertion, but was compulsory—was owing to the plaintiff's opposition to her staying with him, or to her returning to him.

If he " was consenting" to the desertion, the desertion was not a ground for a divorce. *Cobb's Dig.* 226. And the jury might have inferred from this evidence, if he had been before them, that he was consenting to the desertion—at least for the time subsequent to the first year or two of the desertion.

The testimony, then, ought we think to have been admitted.

As to the question of costs. This is not governed by the costs Act of 1842. That Act was amendatory of the costs Act of 1834, which was amendatory of the costs Act of 1792. This Act of 1792, was anterior in date, to the *first* divorce Act. Therefore, it could not be, that it gave costs in

divorce cases brought under the Act; it must have been that it gave costs only in other than divorce cases. The two Acts amending it, do not add to the cases in which it gives costs, they confine themselves to the cases contained in the original Act. Therefore, it cannot be, that these two amending Acts regulate costs in divorce cases—or, in any way, apply to divorce cases.

The question of costs in divorce cases, stands, then, subject to be decided by the common law. And the common law puts alimony, fees to the wife's counsel, and costs, all on the same footing, and makes the question who is to pay them, depend on the ability to pay them, of the parties respectively. As, however, marriage bestows the wife's property on the husband, in the absence of a marriage contract, the presumption, *prima facie* is, that the husband is the only party able to pay them; and, consequently, the husband is *prima facie*, liable to pay them. This he may rebut by showing that the wife is able to pay them.

In the present case, the evidence as to the ability of the parties respectively, if there was any such evidence, is not in the record, and therefore we cannot tell whether the Court did or did not decide the question of costs, according to the principles above stated, as those governing the question. The question however will be opened, as we have to grant a new trial, on the other point; and its final decision can be regulated by those principles.

We therefore do not decide the question about the costs, but merely say, what we do, on the question, to let it be known which way we incline.

New trial granted.