William Phelan vs. Sarah Phelan—Syllabus.

WILLIAM PHELAN, APPELLANT, VS. SARAH PHELAN, APPELLEE.

1. It being a requirement of the statutes of this State that "no divorce from the bond of matrimony shall be granted to any applicant, unless it shall appear that such applicant has resided in the State of Florida for the space of two years prior to the term of such application," this fact must be alleged in the bill, and established by proof.

2. Where the bill omits this material allegation, and in addition to this ·omission it fails to set up a sufficient ground of divorce, as well as the par-

ticular facts constituting the ground, no amount of testimony will justify the court in granting a decree of divorce *a vinculo matrimonii* upon it.

3. Where, after an appearance, the matter of such bill is taken for confessed in default of an answer, and a final decree of divorce *a vinculo matrimonii* is passed upon testimony, an appeal from the final decree opens for the consideration of the court the matters charged in the bill, and if the averment necessary to give jurisdiction of the person is omitted, and the matters charged in the bill are insufficient to sustain the decree, it will be reversed.

4. Where, upon the face of the bill, there is not sufficient alleged to justify a decree of divorce, the court should not, at any stage of the proceedings, allow to the wife means to compensate counsel to prosecute her suit. A *prima facie* case must at least be made in her pleadings before such an order is passed.

5. Permanent alimony is a continuous allotment of sums payable at regular periods. A gross sum of money given absolutely in full satisfaction, or a specific proportion of the husband's estate, cannot be given absolutely in full satisfaction of alimony.

6. Before a decree for permanent alimony is passed, there should be testimony sufficient to form an intelligent basis for such an order. There should be such testimony as would enable the court, with reasonable certainty, to do justice alike to the parties.

Appeal from a decree of the Judge of the Circuit Court for the Suwannee circuit.

The facts of the case, and the points of law arising upon the record, are stated in the opinion of the court.

*J. P. Sanderson* for Appellant.

*C. P. Cooper* for Appellee.

WESTCOTT, J. delivered the opinion of the Court :

Under the statutes regulating the subject, no divorce *a vinculo matrimonii* can be granted unless it is made to appear that "the applicant has resided in the State of Florida for the space of two years prior to the term of such application."

This fact should be alleged in the bill and established by

William Phelan vs. Sarah Phelan—Opinion of Court.

proof. 1 John. Ch., 204 ; 1 4N. H., 381 ; 8 N. H., 162. The allega- tions of the bill are very indefinite upon this subject. It alleges that complainant remained from her home in Fernandina, but omits to state where she was or when she left.   It is then stated that in August, 1864, she was carried to Jacksonville by order of Brig.-Gen. Birney, where she was compelled to support herself and child, without stating how long she resided there or wheth- er she was there until November, 1865.   In November, 1865, it is alleged that she removed to Fernandina, from whence, it is not distinctly stated.   She must have resided in Florida from May, 1864, while she could consistently with the allegations of the bill have been residing in Georgia from May, 1865, to Novem- ber, 1865.   Nor does the bill disclose where she was from May, 1864, to August, 1864.   The allegations of the bill are there- fore clearly insufficient in this respect.   The bill must be so framed as to leave no room for construction or inference to the contrary.

The apparent grounds upon which the divorce is sought are " wilful, obstinate and continued desertion for the term of a year, and the habitual indulgence of violent and ungovernable tem- per."

The bill alleges a marriage in Georgia in 1856.   That in March, 1862, the defendant sent her into the interior of the State " out of the way of the Yankees ;" that in August, 1864, she was brought to Jacksonville, by order of Brig.-Gen. Birney (from whence it is not stated;) that in November, 1865, she removed to Fernandina, (from whence it is not stated,) and that while in Jacksonville and in Fernandina she has supported herself and child without any assistance from the defendant.

There is no express statement that her husband was not with her in Jacksonville or Fernandina.   These facts alone, if estab- lished, do not constitute an actual desertion or an intention to desert for a period of one year before the month of May, 1866, the date of the filing of the bill.   The reasonable conclusion is that the wife was sent first from Savannah to the interior of the

State with her own consent to avoid the troops of the United States, and that subseqently she was carried to Jacksonville by them, from whence it does not appear. It is impossible to determine where she was in May, 1865, or whether her husband was with her or not. Desertion cannot be inferred from the unaided fact of protracted absence, in a case of this kind, and under these circumstances, where the wife left in the first place voluntarily and with the consent of both parties during armed contests. The desertion begins at the time when the intention not to return and the resolution to remain away is formed. There is no allegation here which fixes this period. In addition to these facts, there is a general charge of " wilful desertion for more than one year." This is not sufficient. The cause under the statute is " wilful, *obstinate*, and *continued* desertion, for the term of a year."

The allegations of the bill are therefore not sufficient to warrant a decree upon this ground.

The other allegation in the bill upon which the decree for divorce is based is to the effect that the defendant " habitually indulges in a wilful and ungovernable temper to such an extent that complainant cannot live with him in peace."

The ground of divorce under the statute is for the " habitual indulgence of *violent* and ungovernable temper."

The bill should state expressly that the husband indulges in violent and ungovernable temper *towards the wife*. It is no cause of divorce that he indulges in such temper towards others not in his family in her presence.

A right to divorce results to the wife under the statute only when she is the object of this temper, and the bill must so allege, and the facts should be stated as well as conclusions. 14 N. H., 381 ; 4 Wis., 135.

It is thus seen that this bill is entirely insufficient. What is charged does not authorize a decree for divorce, nor can relief be granted for matters not charged, although they may be apparent from other parts of the pleading and evidence. Story's

Eq. Pldg., Sec. 257 ; 7 Wheat., 522 ; 11 Peters, 229 ; 1 Bro. C. C., 94 ; 6 John., 543, 565.

The only remaining question upon this branch of the subject, is, Does the decree *pro confesso*, admitting that it is regular, which perhaps it is not, cure these defects in the bill ?

A decree *pro confesso* results from a default in pleading. What *its effect may be in other cases* it is needless to inquire here, but defaults in cases of this character amount to but little.

No principle is known which should make a default effective to authorize a decree upon a bill for divorce not alleging sufficient facts to justify the decree. This jurisdiction in matters of divorce *a vinculo matrimonii* for causes subsequent to marriage, and without denying the validity of the marriage, is a special jurisdiction conferred by statute. No court in England had this power before 1858, and since then by statute it is permitted only to a limited extent, and no such thing as a divorce *a vinculo* was known at common law except for causes which made the marriage invalid in its commencement.

While the statutes of this State require that the practice in this class of cases shall be as in other causes in chancery, it does not give like *effect* to defaults or to decrees *pro confesso*. These defaults may be entered and decrees be had in conformity to the rules of chancery practice, but there is a great difference in their results, and it would be deplorable if such was not the case.

It was held in Johnson vs. Johnson, 4 Wis., 135, that " when the bill is so defective as to fail in setting out a legal cause for divorce, no amount of evidence nor the verdict of a jury will warrant a decree upon it;" and that " a general charge of cruel and inhuman treatment is not sufficient when the facts and details specified as constituting the charge fall short of sustaining it." 16 N. J., 391; Pinkney vs. Pinkney, 4 Iowa, 325 ; 27 Maine, 563; 2 Paige, 112.

This is equally as material a consideration in this case as the omission to allege the required residence.

But we are not without express authority in the United States, where this practice of divorce *a vinculo* for causes subsequent to marriage has grown up under statutes, upon the precise question of the operation of a default and consequent decree *pro confesso* in these proceedings.

In Pinkney vs. Pinkney, 4 Iowa, 324, the court held that a petition for divorce should distinctly state the facts constituting the cause, and should show *prima facie* that the complainant is the injured party, before a divorce is decreed by default.

In Illinois, where under the statute it was provided that in all cases for divorce, if the bill or petition be taken for confessed, the court may proceed to examine the witnesses and have a hearing, this matter was expressly decided and the operation of such a decree fixed. Trumbull, J., in Shillinger vs. Shillinger, 14 Ill., 150, says, " It is clear that a court has no authority to decree a divorce on a bill being taken for confessed, without proof to sustain its allegations; and in this respect a proceeding for divorce differs from an ordinary suit in chancery, for in the latter case it is discretionary with the court when a bill is taken for confessed to hear testimony or not in its support. The court may refer the cause to a master, as in this instance, to take the proofs and report the facts, and the facts to justify granting the divorce must be proven to the court; and it would be erroneous to grant the decree, on taking the bill for confessed, without any evidence, and if, as in this case, the whole evidence on which the court acted is set out in the record, and it is insufficient to have warranted the decree, it will be reversed."

In this case, although the statute expressly conferred the power upon the chancellor to examine witnesses and proceed to a hearing, the court, after decree *pro confesso* upon a sufficient bill, examined upon appeal the entire record, and reversed the final decree for matters *subsequent to the default*, although the chancellor had acted in strict conformity to the statute.

This is one of the many differences between divorce suits and other chancery cases, which has led most elementary writers to de-

signate it as a suit *sui generis ;* and this, like many other of its peculiar incidents, arises from the fact that the public have an interest in these suits, and the duty of the court is to protect that interest even at the expense of the wishes of the parties themselves.

We proceed to examine the other portions of the decree as distinct from the decree of divorce proper; and first, the matter of fees awarded the solicitor in behalf of the wife.

In 2 Paige, 454, it was held that no allowance for costs or alimony should be made to the wife, if it appears from the face of the bill that she can obtain no decree thereon. In 8 Wendell, 370, the same rule is announced. That portion of the decree awarding costs for the wife's solicitor should be reversed. The principal decree is reversed upon grounds attributable to the want of care in the solicitor in drafting the bill, and it should not be permitted that the husband's estate should be subjected to all expenses of litigation, whether regular or irregular. 8 Wendell, 370. " It might be very gratifying to the cupidity of a captious solicitor, who should be more intent on making money out of family dissensions than bringing their difficulties to a speedy adjustment, to try experiments in practice, and subject the husband's estate to all expenses of litigation, whether regular or irregular, and no husband should be subjected to such legalized depredations." 8 Wendell, 370. These remarks I do not introduce from anything that appears in this particular case, nor have I the least reason to attribute any such thing to the solicitor in this cause. It is the language of a learned court, and it is inserted to show what great abuses might be practiced under a contrary doctrine. As a general rule, if the case made by the bill drawn by the attorney is not a good one, and that fact is plain, the husband should not be made to pay for such labor, even when the application for the order is made before final decree, nor should he be made to pay for any labor of a subsequent attorney who proceeds to a hearing upon such bill, especially where the wife fails upon an appeal. He should have amended

the bill or asked leave to file a supplemental bill.    3  Ed.  Chy.,
387 ; 1 Hast., 471 ; 2 Bish., M. & Div., §406, 416.

This allowance is not a matter of right in the wife.    It is a
creature of the ecclesiastical courts, the purpose of which is to aid
the wife to have justice done when she is without means, and
makes a *prima facie* case in her pleadings ; and is never
awarded when the wife fails in her suit, and the making of the
order for it is postponed to the hearing.

The next subject is the matter of permanent alimony to the wife.

There appears to have been no decree for alimony during the
suit, but a final decree for the sum of two thousand dollars
for " alimony and separate maintenance."    This it is presumed
was intended to indicate permanent alimony, and it cannot be
sustained for two reasons.

Permanent alimony is not a sum of money or a specific pro-
portion of the husband's estate given absolutely to the wife.    It
is a continuous allotment of sums payable at regular periods for
her support from year to year.    5 Eng. Ec., 126, 129 ; 7 Dana,
681 ; 4 Hen. & Mun., 507 ; 4 Rand., 662 ; 4 Green, Iowa, 26.

· Not only is there error in this respect, but there is manifest
error in another.

The amount of alimony is not regulated by any absolute fixed
rule ; it is matter of discretion with the court, and that discretion
is not arbitrary, but a judicial discretion, to be exercised upon an
equitable view of all the circumstances of the particular case.
7 Hill., 207 ; 10 Ga., 477 ; 3 Phillim., 378 ; 22 Ill., 187.

The actual income of the husband appears from the cases to
be as a general rule the precise fact to be regarded.    2 Hag.
Con., 199, 201 ; 3 Hag. Ec., 472 ; 5 Eng. Ec., 186 ; 2 Phillim., 40.

But this is not a fixed and absolute rule, and there are cir
cumstances which vary it.    Before an allotment of permanent
alimony is made, the ability of the husband should be made to
appear, as well as the other considerations which are to be esti
mated in connection with his faculties, in determining the
amount.

What is the testimony in this case?

The first witness states that he does not know Mr. Phelan's circumstances. The next witness, a son of complainant, testifies that he seems to have a grocery and provision store, with some dry goods. His circumstances, pecuniarily, seem to be easy. He is at the present time building a store, although I believe he is doing so in his married daughter's name. The next witness says, Mr. Phelan seemed to be comfortable in his circumstances. He kept a store in Fernandina, and was building a store-house, which has since blown down. One says he has understood he owns railroad stock or bonds, but does not know the fact.

The master, upon this testimony, reports his conclusion to be, that William Phelan is now merchandizing in Fernandina, and *appears to be* the owner of real estate in said city, and is *believed* by witnesses, from *common report* and from all *appearances*, to be in easy circumstances, the actual amount of means not being known definitely.

This is not sufficient to arrive at any accurate conclusion. It amounts to but little except that defendant has a provision and grocery store. Whether he has one thousand dollars income or twenty, is not disclosed, and there is nothing in reference to various other matters which should enter into the estimate.

The cases of allotment of alimony where the husband was a merchant are numerous, and the general rule applicable could be readily applied. The testimony here is not sufficient to come to any conclusion which could, with reasonable certainty, be just either to the husband or wife. There must and should be an intelligent basis for such an important order of this character, which provides in future a fund for the support of the past wife, and which levies upon the estate or faculties of the late husband an annual sum in discharge of his obligation.

For the want of an intelligent basis upon which to make the order, the allotment of the sum of three hundred dollars per annum for the support and maintenance of the infant must also be reversed.

41

This court has decided that in all cases of divorce it is proper to grant alimony, "the right to decree alimony being held to be an incident to the power to grant divorces, (Chairs vs. Chairs, 10 Fla.;) and the 10th section of our statute provides that when a divorce is granted "on account of the parties being within the prohibited degrees, or for the cause of adultery, or extreme cruelty," the court may in every case take such order touching the care and maintenance of the children as may be just. The divorce here sought is not for the grounds mentioned in that section, and the question arises whether, independent of statu-tory regulations, this matter can be considered in this case and in this form. But it is unnecessary to decide this point in this case.

It may not have been necessary to have passed upon any portion of this case except the bill, as its character required a reversal of the decree, but I have, for the benefit of both parties, examined the record, and pointed out such apparent errors as were plainly disclosed, and in order that such defects might be corrected if there was merit in the case, and it was prosecuted further.

In this case, although the wife has failed in her suit, she should recover the statutory taxable costs. Courts will not ordinarily, if they have any discretion in the premises, decree these costs against a defeated wife. The decree in such cases continues her disabilities as a *femme covert*, and she should not be encumbered with the responsibilities of a *femme sole*. 9 Dana, 52; 29 Ga., 281; 2 Paige, 454; 4 Porter, 479.

It is ordered, adjudged, and decreed, that the decree entered in this case be reversed, except so much of it as adjudges the taxable costs of the court against the defendant in the court below; that this cause be remanded, with leave to the appellee to dismiss her bill without prejudice, or to amend her bill, or file a supplemental bill in that court, as she may be advised, and for such further proceedings in accordance with this opinion as are conformable to the principles of equity.

HART, J., delivered the following concurring opinion :

This is a cause in chancery for divorce, and is appealed from the Circuit Court in Nassau county when that county was in the Suwannee circuit under the late government of the State. The appeal was taken generally, after final decree, within the time allowed by law for the taking of appeals in chancery, and was made a supersedeas by order of one of the justices of the Supreme Court.

The bill was filed May 17, 1866, and alleges that the complainant was married to William Phelan, also a citizen of said county, in Savannah, Georgia, on or about the 21st day of April, 1856, with whom she continued to live as his wife until the 3d of March, 1862, when he sent her into the interior, pretending that he would follow her, which he failed or refused to do, and never supported her afterwards. That she remained from her home in Fernandina, depending entirely on her own resources, until August, 1864, when she was brought to Jacksonville by military order, where she was obliged to support herself and child, though he was able to furnish her with ample means of support, and could have done so without injury to himself. That in November, 1865, she returned to Fernandina, where she has ever since resided and supported herself and child, he refusing to aid or assist her in any way or manner. That she has in her possession one child, viz. : Anne Belle Phelan, about nine years of age, whom she has supported and educated without his aid. That he habitually indulges in a harsh and ungovernable temper; is, therefore, incapable of taking care of and educating said Anne Belle. That he is possessed of and owns considerable property, out of which he could support her and his said child, which he has failed and refused to do. That he wilfully deserted her for more than one year prior to the filing of this bill, and still remains wilfully absent from her society. That he habitually indulges in a wilful and ungovernable temper, so much so that she cannot live with him in

peace, and that he is totally incapable of educating her said child, the said Anne Belle. That he ought to be compelled to support her and his said child.

The subpœna was issued, served, and returned on the day of the filing of the bill. There was no answer filed in the cause, and there was what was deemed to be a decree *pro confesso*, and an attempt to take and produce testimony and the report of a master, which will be the objects of some further consideration. A document appears which was claimed to be a decree of divorce, of alimony, and expenses and costs, which may have been made after these steps were taken, but it is without date, or any evidence of being filed or " delivered in open court." It is as follows:

" It is ordered, adjudged, and decreed in the above-entitled cause that the complainant and defendant be divorced *a vinculo matrimonii*, and that the marriage hitherto existing between them be and the same is hereby declared null and void. It is further ordered, adjudged, and decreed that the defendant pay to complainant two thousand dollars for her alimony and separate maintenance, and that execution do issue for the same against the goods and chattels, lands and tenements of said defendant in favor of complainant at the expiration of ten days from the date of this decree, if not paid or satisfied by or before the expiration of said time. It is further ordered, adjudged, and decreed that defendant pay to complainant the sum of three hundred dollars per annum for the support, maintenance, and education of their infant daughter, Anne Belle Phelan, until she shall attain her majority, or be united in lawful marriage before she thus attains her lawful age; and that until she is married or thus attains her majority, her said mother, Sarah Phelan, the complainant, be and is hereby appointed her lawful guardian, to have charge, control, and custody of her person and education. And that the defendant be and is hereby ordered, adjudged, and decreed to secure the payment of said annual amounts of three hundred dollars by giving good and sufficient securities

unto said complainant as guardian as aforesaid, under penalty of being in contempt of this court. It is further ordered, adjudged, and decreed that said defendant pay or cause to be paid unto Charles P. Cooper, solicitor for complainant, the sum of three hundred dollars for his fee in the premises, and that execution do issue for the same against the goods and chattels, lands and tenements of said defendant in favor of Charles P. Cooper, solicitor as aforesaid, after the expiration of ten days from the date of this decree, if not sooner paid and satisfied. It is further ordered, adjudged, and decreed that the defendant pay all the legal costs in said case laid out and expended, and the fee and compensation of the master in chancery in and about the same, to be taxed at twenty-five dollars, to be included in the costs to be taxed up in said cause, and to be collected by execution in the said matter against said defendant in manner and form as provided by law for the collection of costs in suits at law and decrees in chancery from parties against whom judgments at law have been rendered or decrees in chancery pronounced."

The petition of appeal is substantially as follows, properly dated and filed:

*To the Honorable E. M. Randall, Chief-Justice, and Associate Justices of said Court:*

The petition of William Phelan, appellant, humbly presents the following causes for appeal and exceptions to the decree rendered against him in Nassau county, now in the Fourth Judicial Circuit, and your appellant would show unto your honors:

1st. That in the rendition of the judgment *pro confesso* he was taken by surprise; that he and his solicitors supposed that the bill for divorce was dismissed, for at the first term, upon the sounding of the chancery docket, the judge announced that the solicitor of appellee who had filed the bill could not practice in his court, and that unless some other attorney appeared for

her, the bill would be dismissed; and no other attorney appear-ing, he and his solicitors supposed that said bill was consequently dismissed.

2d. That he and his solicitors at December term, 1867, following, discovering that a judgment *pro confesso* for want of an answer was taken without notice by C. P. Cooper, Esq., as solicitor for said appellee, during vacation his solicitors spread a motion on the motion docket to open said decree *pro confesso*, and frequently applied to the judge and urged him for a hearing upon said motion to open said decree; but that his honor did not grant the same, and that a final decree was pronounced at said December term, 1867, without the said motion being heard or disposed of.

3d. That no actual marriage was proved, as indeed it could not be, the appellee in her bill not even daring to sustain such an allegation by her oath. That proof of cohabitation could not be sufficient evidence of marriage in this case, as it will appear by appellee's bill and evidence that they had not cohabited for over five years.

4th. That if cohabitation had been proved, it should not be received in proof of marriage in this case, as it would involve the proof of an offense, from the fact that his wife, to whom he was lawfully married nearly thirty years ago, is still living and undivorced, and that he is in constant correspondence with her.

5th. That he being aged and very feeble, and his circumstances very contracted, being barely able to obtain a support for himself, the alimony decreed, with counsel fees, &c., is exorbitant and excessive, and altogether beyond his ability to pay.

6th. That he has a good and meritorious defense to said bill of divorce, that he was never married to appellee; that he so instructed his solicitors, and well supposed that they would have pleaded to and defended said cause; but that through surprise or negligence they failed to plead or answer, and are considered irresponsible persons against whom he could never ex-

pect to receive any pecuniary redress from any damages he might suffer in the premises.

7th. That the evidence before the master was taken *ex parte*, and that Mr. Spaulding, one of the witnesses, is the son of the appellee.

8th. That upon the return of the master's report, no note thereof was made in the chancery order book, as required by the rules of court, and he had no notice of the same.

9th. That he did not have his day in court.

10th. That there is no day or date to said decree.

11th. That there is properly no evidence before your honors in said cause, inasmuch as it does not appear from any note or memorandum on the papers containing the evidence taken by the master as filed in the cause, that such evidence was read at the final hearing, as required by the rules of court.

12th. That January 27th, 1868, he filed his bill in the nature of a bill of review impeaching said decree for fraud, and asking, with other relief, for a writ of injunction to stay further proceedings, and that the same might be set aside, and was refused.

13th. That he, upon said injunction being refused, dismissed said bill, and filed his petition for a re-hearing in the original cause for divorce, which re-hearing was also refused.

14th. That said decree is contrary to law, equity, and good conscience.

There are papers in this record which are claimed to be notices, a bill in the nature of a bill of review, dismissal, a petition for re-hearing, motions, orders, &c., which are so informal and deficient of important requirements as not to attract special consideration, especially as the decision of the case rests upon others more particularly specified.

The proceedings of appeal are regular, and the petition of appeal assigns errors. An appeal from a final decree in chancery, or any appeal properly operating as such, has the legal effect of causing in this court substantially a re-hearing of

the whole case. This court, therefore, is warranted in consider-
ing the whole record, and if any material error shall be found
to have been committed, it is its duty to have it corrected.

The record is very deficient in dates and descriptive head-
ings, and the court cannot see at what term or terms of the cir-
cuit court some of the most important steps were taken, or at
what times some of the most important documents were filed.
It is also very defective in showing whether or not documents
required by law to be placed upon the order book are there.
There is not a motion, notice, order, report, or decree in the
record of the circuit court proper, that conforms to the long-
established formulas prescribed in these very important pro-
ceedings in chancery. If a more perfect record should be re-
quired, it is doubtful if it can be obtained, and should the court
dismiss the appeal for the non-conformity to the requirements
of the rules of pleading and practice, it may be that a precedent
will be left standing that the public is deeply interested in cor-
recting.

In cases at law or chancery where judgments for money or
other property is all that is sought, the law of pleading and
practice wisely leaves much to the action of the parties them-
selves; and whilst ample facilities are afforded for the attain-
ment of justice, if the parties do not see fit to avail themselves
of them, it may properly be considered as their own fault, and
the court will not interfere. In cases of divorce, society is more
nearly interested, and it has been wisely held that the public
may properly be considered an interested party to be remem-
bered by the court, and its interests guarded and protected. It
not unfrequently happens that both the immediate parties are
willing to the divorce, and that the only earnest contest is over
the question of money by the name of alimony ; and, as a result,
the pleadings are neglected except for that purpose alone ; and
*that* neglect is precisely what affects the interest of society. If
one neglects to allege a *lawful* marriage, with the necessary and
sufficiently certain allegations of time and place, and the other,

willing to have the sanction of a judicial separation and anxious only about the amount of money involved in the case, neglects to plead, answer, or demur as to those points, if the court is not wise and watchful it may be entrapped by some show of evidence into granting a decree " *a vinculo matrimonii*," in a case in which there never was a marriage, and the immediate parties have been for years criminally cohabiting, and thus neither of them entitled to relief, the judiciary subjected to blame and ridicule, and society injured.

Joel Prentiss Bishop, in his admirable commentaries on the law of marriage and divorce, discusses this subject with great learning and ability, and remarks as follows: " It has already been sufficiently shown in the foregoing pages that not only the parties but the public also have an interest in marriage and its dissolution. Growing out of this two-fold interest we have the doctrine running through all matrimonial suits and bringing into subserviency all other law on the subject, that the proceeding, though upon its face a controversy between the parties of record only, is in fact a triangular suit, ' *sui generis*,' the government or public occupying the position of a third party without counsel, it being the duty of the court to protect its interest." See 2 Bishop, 230.

It is not inconsistent with any of the authorities, to lay down the law to be, that the bill must in every case allege enough with legal certainty on every material point to support legal proof, which must also be made to satisfy the conscience of the chancellor, that there was in point of fact a lawful marriage, duly solemnized, else the court has no power to grant a decree of divorce from the bond of matrimony, whether the bill is demurred to or not. 5 Fla. R., 560. The bill must set out a sufficient cause of divorce, else the court cannot entertain it.' 27 Maine, 563. Where it does not, even if a jury find a verdict upon it, no judgment can be rendered thereon. 4th Wis., 135.

This bill alleges " that complainant was married to William Phelan in Savannah, Ga., on or about the 21st of April, 1856."

This allegation is uncertain as to identity of the William Phelan who is the defendant in this suit, uncertain as to its having been a lawful marriage, and wholly deficient as to the facts and circumstances of the solemnization. They are not sworn statements, and if they were, the temptation to evasion or mental reservation is sometimes so strong in such cases as to make the court very watchful. The words "*on or about*" used thus in such a case are unsatisfactory, and are deemed to be too uncertain. See Story's Eq. Pl., par. 23. Uncertainty in allegation will be most strictly construed against the party making it. 10 Fla. R., 179.

It is objected to this bill that it does not contain an allegation that complainant has been a citizen or resident of the State for two years prior to the filing of her bill; and it is argued that without this averment the court cannot take jurisdiction of the case, and that where there is a limitation or restriction upon the jurisdiction of a court, such facts as are necessary to give jurisdiction must appear on the face of the record, and if they are wanting, advantage may be taken of it at any stage of the proceedings, even in the appellate court.

The act of 1852, chapter 522, says: "No divorces from the bonds of matrimony shall be granted to any applicant unless *it shall appear* that such applicant shall have resided in the State of Florida for the space of two years prior to the time of such application." It seems very clear, that unless the applicant has been a resident of the State for two years prior to the application, the court has no authority to decree the divorce.

This is jurisdictional. The bill must show the authority or jurisdiction of the court, or the action of the court will be nugatory. A judgment or decree rendered where jurisdiction or authority is wanting is utterly void. "*Secundem allegata et probata*" obtains.

It is also objected to this bill that the child for whom support and education is prayed is not alleged to be the offspring of the defendant, and that there is not a sufficient averment of the

ability of the defendant to respond to a decree of alimony, and of regular payments for the child. The first one of these two objections involves the question as to whether or not this allegation is stated with sufficient certainty. " Care should be taken to frame the stating part of the bill fully and accurately." Story's Eq. Pl., par. 27.

" Uncertainty in a bill may arise in various ways. *   *   * The case intended to be made may be certain, but the allegations in the bill may be so vague and general as to draw with them the consequences and mischiefs of uncertainty in pleadings. Some of the material facts may be stated with sufficient certainty, and others again with so much indistinctness or incompleteness as to their nature, extent, date, or other essential requisites as to render inert or inefficient those with which they are connected, or upon which they depend; in each of these cases the effect may be fatal to the objects of the bill." Story's Eq. Pl., par. 242. " Every fact essential to the plaintiff's title to maintain the bill and obtain the relief must be stated in the bill, otherwise the defect will be fatal." Ibid., 257; 5 Fla. R., 560; 1 Daniel, 411, and note, 422 and 2. There is no direct allegation that the child is his offspring; it is incidentally mentioned as " his child," but that is not an allegation of the fact. Correct forms of allegations of this nature may be found in 2 Bishop, 539 and 777. In some cases of appeal this might not alone be a fatal defect, nor is it decided so to be in this case; but to the candid legal mind the reason for considering it to be a defect is obvious.

Upon the subject of the second of said last-mentioned objections, it is found that there is some variety of judicial opinion as to the bearing and effect of the question of the husband's ability to respond to a decree of alimony, what kind of property it should proceed from, and whether from property accumulated after decree, or only from that which was possessed before. There can be no serious question of the soundness of the doctrine that " the duty of the husband to support his wife does not de-

468 SUPREME COURT.

William Phelan vs. Sarah Phelan—Concurring Opinion of Hart, J.

pend alone upon his having tangible property; that while they are living together they are bound to contribute by their several personal exertions to a common fund which in law is the husband's, and from which the wife may claim a support; that if she is compelled to seek a divorce on account of his misconduct, she loses none of her rights in this respect, only she is to draw her maintenance in a different way, that is, under a decree for alimony, based, if he has no property, upon his earnings or ability to earn money." 2 Bish., 446. In considering these questions the sounder doctrine appears to be that alimony, when decreed, is a charge upon the estate or property of the defendant, whether of lands, goods, and chattels, or income, without regard to the time of his acquiring them, until the court, for good cause correctly alleged and proved, shall modify or dissolve the decree, or until it shall be reversed; and that like a judgment at law the decree passes whether the defendant has any property or not. If the complainant correctly alleges and proves that the defendant has property or income, the court may act upon it in making the decree. If the husband has been guilty of the grave offenses against the law for which divorces are allowed, he has voluntarily subjected himself to the just burdens of such a decree, and cannot rightfully complain. The injured wife and helpless offspring are justly entitled to all the aid of legal process to enforce that support of which they have been so deprived. Process may or may not be able to find or reach it, but that is no objection to the making of the effort. If he meets the requirements of the decree, and furnishes the reasonable maintenance and support, process from time to time may not be required.

The allegations of statutory causes set forth in the bill are not made with that conformity to the intention of the law that is necessary in such cases. It alleges that the defendant "habitually indulges in a harsh, ungovernable temper; that he habitually indulges in a wilful and ungovernable temper." The corresponding clause in the statute prescribing the cause of divorce is, "for the habitual indulgence of violent and ungoverna-

ble temper." Thompson's Digest, 222. A wilful and ungovern-
able temper is not necessarily a violent and ungovernable tem-
per. Violence of some kind calculated to inspire terror or pro-
duce a fear of personal injury was evidently intended to be con-
nected with the ungovernable temper as constituting this cause
for divorce. It alleges that he " wilfully deserted her for more
than one year prior to the filing of this bill, and still remains
wilfully absent from her society," the corresponding cause of di-
vorce prescribed by the statute being, " for wilful, obstinate,
and continued desertion for the term of a year." The statute
does not make a wilful desertion that may not have been con-
tinued, but may have ended and occurred again, nor a wilful ab-
sence which may not necessarily constitute " obstinate desertion
for the term of a year," a cause or causes of divorce. The
statute is plain, comprehensive, and explicit, and in a case that
really comes within it, it is not difficult to make the allegations
conform to its language and plain meaning.

The bill was filed and supbœna served May 17th, 1866. The
first Monday in June or July may have been return day, and de-
fendant was required by law to enter his appearance on the rule
day next after return day, and to file his plea, answer, or de-
murrer on the rule day next succeeding that of entering his ap-
pearance, which may have been August or September, in default
whereof " the plaintiff may at his election enter an order (as of
course) in the order book, that the bill be taken *pro confesso*."
Thompson's Digest, 457. Did the plaintiff do it? There is
nothing in this record purporting to be from the order book,
docket, or files, that is even claimed to be any evidence what-
ever of the defendant having by himself or solicitor entered his
appearance, or of his having at any time filed a plea, answer, or
demurrer, except documents that he subsequently filed in efforts
to get rid of the decree, wherein he stated that his appearance
had been entered. If his appearance was entered, still it is not
claimed that any plea, answer or demurrer was ever filed for
him. Now did the plaintiff elect to enter, and enter, " an order

(as of course) in the order book that the bill be taken *pro confesso?*" For the supposed fact that he did so was the foundation of several important proceedings in that, and of considerable argument in this court, and is thought to be of great importance in the case. The only document in this record that is claimed to have been, or to be such, is as follows :

SARAH PHELAN vs. WILLIAM PHELAN—In Chancery.

"Plaintiff, by her attorneys Cooper and Bisbee, and defendant, by his attorneys Livingston and Friend. No answer being filed, decree *pro confesso* was granted, and referred to a master. Dec. 17, 1866."

It has no statement of being before any court, no signature, nothing to show that it was entered in the order book, contains no language of an order, and by its language it implies that a decree *pro confesso* was referred to a master. Clearly it is not " an order entered (as of course) in the order book that the bill be taken *pro confesso.*" It cannot be correctly considered to be a decree *pro confesso*, nor made the basis of any subsequent proceedings as such. Nor is there in this record, any order from the order book or elsewhere, referring the bill, or any part thereof, or any subject involved therein, to a master for any purpose.

There are statements of three men, purporting to have been subscribed and sworn to before another who signs himself master in chancery, and these statements are claimed to be the evidence in the cause. They are without date, or note of filing, or of having been read in evidence, nor are they entitled as being before any court. Thus this document is presented without any of the important attending insignia required by the law in order to give it the dignity of a document containing legal evidence in a cause. Looking into it, however, it is found to contain no attempt to obtain proof of any marriage except by implication from cohabitation and recognition by defendant in

that way, and from papers that may be letters of defendant to complainant during virtual cohabitation; unsatisfactory statements tending to show "the indulgence of habitual ill and ungovernable temper;" opinions of defendant's unfitness to raise a girl child; and statements attempting to show abandonment of complainant by defendant.

There is a document purporting to be a report of a master in chancery, also without date or note of filing. The judges of the circuit courts in their respective circuits are authorized by statute to appoint as many masters in chancery as they may find necessary, who shall receive the appointment in writing from the judge, which shall be recorded in the minutes of the court. He shall take the official oath before proceeding to discharge any of the duties of the office, and such oath shall be entered at full length on the order book. Thompson's Digest, 463. All this may have been done, but this court is in no manner informed of it. If it were done, or even if it were shown by the record that the judge of the circuit court had recognized this man as a master in chancery, ordinarily this court could legally presume him to be such; but when no appointment, nor qualification, nor recognition of him by that judge is shown, this court cannot supply the deficiency. The statute provides that the report shall be filed by the clerk and the return thereof noted in the order book. Thompson's Digest, 465. This secures to the parties access to it, and notice of it; but nothing of this kind is shown by this record to have been done with it, and for these reasons, deemed to be important, this document cannot in my opinion legally be adjudged to be official.

As it does not appear that "the plaintiff entered an order in the order book (as of course) that the bill be taken *pro confesso*," nor that a final decree was pronounced at December term, 1867, the error assigned in the second ground in the petition of appeal cannot in my opinion be considered to be well taken.

For the reasons stated at large in this opinion, the errors assigned in the third, eighth, ninth, tenth, eleventh, twelfth, thir-

teenth, and fourteenth grounds in the said petition are in my opinion well taken.