HACKER, Respondent, vs. HACKER, Appellant.

*April 25 — May 15, 1895.*

*Divorce from bed and board.*

Evidence that a husband had neglected properly to care for and support his wife, though able to do so; that he had bestowed opprobrious epithets upon her and subjected her to personal indignities; that angry altercations had occurred between them; and that his sons had ill-treated her in his presence and without rebuke — together with the fact that the relations between them had been imbittered. by the incidents of the trial — is. *held*, although the wife was not wholly without fault on her part, to have justified the granting of a divorce from bed and board forever (under subd. 3, sec. 2357, R. S.) on the. ground that the husband, being of sufficient ability, had neglected to provide for the wife, and that it was unsafe and improper for them to live together.

APPEAL from a judgment of the circuit court for Washington county: A. SCOTT SLOAN, Circuit Judge. *Affirmed.*

The facts are stated in the opinion.

*H. W. Sawyer,* for the appellant, contended, *inter alia,* that on the plaintiff's own testimony defendant was not guilty of cruel and inhuman treatment. Mere austerity of temper, petulance of manner, rudeness of language, want of civil attention and accommodation, even occasional sallies of passion, if they do not threaten bodily harm, do not amount to legal cruelty. *Freeman v. Freeman,* 31 Wis. 248; *Evans v. Evans,* 4 Eng. Ecc. Rep. 311; *Crichton v. Crichton,* 78 Wis. 62; *Beyer v. Beyer,* 50 Wis. 254; *Pillar v. Pillar,* 22 id. 658; *German v. German,* 57 Mich. 256; *Peck v. Peck,* 66 id. 586. Mere unpleasantness or inability to live together in harmony is not ground for a divorce. *Davis v. Davis,* 1 Hun, 444; *De Meli v. De Meli,* 67 How. Pr. 20; *Peck v. Peck,* 66 Mich. 586; *Vignos v. Vignos,* 15 Ill. 186; *Fizette v. Fizette,* 146 id. 328. The conduct referred to in subd. 3, sec. 2357, R. S., which would render it improper and unsafe for

the wife to live with her husband, is such conduct as would constitute cruel and inhuman treatment under subd. 5, of the preceding section. *Johnson v. Johnson*, 4 Wis. 141; *Mason v. Mason*, 1 Edw. Ch. 278; *McBride v. McBride*, 31 N. Y. St. Rep. 631; *Whispell v. Whispell*, 4 Barb. 218; *Walton v. Walton*, 32 id. 203; *Davies v. Davies*, 55 id. 130; *Ruckman v. Ruckman*, 58 How. Pr. 278. The ruling of the court that the feeling caused by the contradictory testimony of the parties upon the trial was to be considered was also erroneous. The cause of action must have accrued before the filing of the bill. *Ferrier v. Ferrier*, 4 Edw. Ch. 296; *Embree v. Embree*, 53 Ill. 394; *Hill v. Hill*, 10 Ala. 528; *Tourne v. Tourne*, 9 La. 453. . The plaintiff having left and refused to return without sufficient cause, defendant is not required to divide his property with her for her use elsewhere. *Sturtevant v. Starin*, 19 Wis. 268; *Morgan v. Hughes*, 20 Tex. 141; *Onison v. Heritage*, 45 Ind. 73; *Brown v. Mudgett*, 40 Vt. 68.

*H. K. Butterfield*, for the respondent, to the point that any course of conduct which would have the effect to impair health is legal cruelty, cited *Beebe v. Beebe*, 10 Iowa, 133; *Caruthers v. Caruthers*, 13 id. 266; *Wheeler v. Wheeler*, 53 id. 511; *Beyer v. Beyer*, 50 Wis. 254.

PINNEY, J. The plaintiff brought her action against the defendant for divorce from the bonds of matrimony, and for alimony, and also to set aside an antenuptial settlement on the ground of fraud and deceit. It was charged in the complaint, and denied in the answer, that the defendant had treated the plaintiff in a cruel and inhuman manner; that he called her vile names (not fit to be here repeated), and when sick and suffering from rheumatism asked her to do some work for him, and, upon her telling him she was unable, he called her other vile names, and pushed her violently, and told her to go; that when she married him in November,

1887, she was a strong, healthy woman, but he had compelled her to work so hard, doing the work for a family of six persons without a servant, that she was poor in health and broken down physically; that the defendant was illtempered and abusive to her, and, although he was a rich man and amply able to properly support and maintain her, that he had neglected and refused to properly provide for her, and had notified merchants where they lived not to allow her to buy things on his credit or account.

The antenuptial agreement was, in substance, that she was to have, in lieu of dower and of all other claim upon his estate, the sum of $1,500, to be paid to her upon his decease, but in case she predeceased him it was not to be paid to any other person; and it was charged that she was unable to read English, and that its provisions were misrepresented to her by the defendant in certain important particulars, and that the real agreement was that it should be for the sum of $3,000, and that, in the event of her dying first, it should go to her children, and that he represented it was written for $1,500 only so that his children would not oppose the marriage, and that afterwards he would settle on her and her children the other $1,500, which he had ever since refused to do; and it was claimed that he had wilfully deceived and defrauded her in the premises.

The defendant denied the charges made in the complaint, and by way of counterclaim alleged plaintiff had notified him that she repudiated the marriage settlement; that she had wilfully and without cause left her home and refused to live and cohabit with him; and that the said agreement ought to be canceled unless she would return and live with him as his wife; and judgment was asked accordingly.

It is not necessary or profitable to review or state the evidence given on the trial, detailing the unhappy differences which arose between the parties and imbittered and destroyed all probable, if not possible, harmony or comfort of

their marriage state. It is evident that the marriage was founded upon considerations of convenience merely; that they regarded the relation they assumed to each other in the light of a business transaction; and it is no matter of surprise that it has resulted so unhappily and unfortunately. At the time of the trial she was of the age of fifty-three years, and he of fifty-seven. At the time of the marriage she was a widow and the mother of several children, three of whom were minors; and she became the third wife of the defendant, the first being dead and the second divorced. He was the father of five surviving children, four of whom reside in his family, and three of them, minors, are nearly grown up. There was no issue of this marriage. The defendant was found to be worth $18,000, and that he supports himself and family from the income of his property.

The court, after hearing the evidence, covering about eighty printed pages, suggested to the parties that the case for divorce was a weak one, to say the least of it, but that after what had transpired at their home and at the trial, and the ill-feeling that would grow out of it, they having contradicted each other on oath, whether it would not be better to separate them and make the wife some reasonable allowance out of the husband's property, and that it was not clear that the marriage settlement was not fair, in view of the condition of affairs. The defendant then offered to have the plaintiff return to him and have a home and be assured of courteous and kind treatment in the same manner as if the proceedings had not been commenced; she to drop all allusion to the same and treat the defendant and his family in the same manner. The court finally held the case over, with directions to the plaintiff to go back and try and live with the defendant's family, and that if they did not get along the decision could be modified, and advised the plaintiff "to go back and try and live with them." Plaintiff said she could not. The result was that a final decision was postponed.

About six months afterwards the plaintiff filed affidavits, upon which she moved for judgment; and the defendant, on several affidavits on his part, also moved for judgment. These affidavits tended to establish quite clearly the impracticability, and indeed the impossibility, perhaps, of the parties living together as suggested by the court, and that the feeling created by the trial had become intensified by charge and countercharge in testimony, some of which related to defendant's eldest daughter, in vindication of whom many of the defendant's affidavits were made. The court thereupon made a finding embracing the points already stated, to the effect, among other things, that the antenuptial marriage settlement was fair and valid; that the plaintiff had a dower interest in lands yielding her $40 per annum; that for the past five years the relations between the parties had been unpleasant and disagreeable; that the plaintiff had not been well treated in all respects by the defendant's children; that on a few occasions they had ill-treated her without any objection on his part; that her life had been one of unhappiness and misery, and that this state of affairs had been intensified by the action and testimony of the parties, and it was then unsafe and improper for the plaintiff and defendant to live together; that the defendant had for a long time, during their married life, neglected to properly provide for the plaintiff, although of sufficient ability; that they had lost all regard for each other, and the defendant did not in fact desire the plaintiff to return to him, but simply that he might be saved the necessity of contributing to her support, and that under the circumstances of the case she ought not to return to him; that she had been a true and faithful wife in all respects, and left him for what she thought a good and sufficient cause; and that it was discreet and proper, under the circumstances, that a divorce should be granted. The court granted a divorce from bed and board forever, dismissed the defendant's counterclaim, and ad-

judged that the defendant pay the plaintiff $750 within twenty days, and charged the same on certain real estate of the defendant, and canceled the antenuptial marriage settlement,— all by way of division of their property,— and his estate was to be free and clear of any claim on her part for dower, etc. The defendant appealed.

The statute is that: "A divorce from bed and board forever or for a limited time may be adjudged . . . (3) On the complaint of the wife when the husband, being of sufficient ability, shall refuse or neglect to provide for her, or when his conduct toward her is such as may render it unsafe and improper for her to live with him." R. S. sec. 2357. The court, after having seen the parties and heard them as well as some of their children testify, and having carefully considered the case, in the exercise of the sound judicial discretion conferred by the statute, based its judgment, not upon the charge of cruel and inhuman treatment, but upon the neglect of the husband, being of sufficient ability, to provide for the wife, and that his conduct towards her was such as to render it unsafe and improper for her to live with him. We think that the court acted discreetly and upon sufficient evidence in arriving at the conclusion it did. The case presents simply questions of fact, and, although the evidence is quite conflicting in many respects, we cannot disturb the finding. The evidence sustains it. Here was neglect and failure to properly care for and support the wife, and opprobrious epithets had been bestowed upon her, and she had been subjected to personal indignities, and angry altercations had occurred between them. His sons ill-treated her in his presence and without rebuke. To such treatment no self-respecting wife ought to be expected to submit. Even upon the ground of cruel and inhuman treatment, it has been well said: "Everybody knows that the conduct of the husband toward the wife may be such, even without any personal violence, actual or threat-

ened, as to render her marriage state intolerable, and, from mere mental suffering and physical debility so produced, to make it utterly impossible for her to perform the duties which are expected of a wife, and which otherwise she would be able and anxious to perform." *Freeman v. Freeman,* 31 Wis. 249. And conduct such as above stated, not amounting to cruel and inhuman treatment, perhaps may, in its unhappy consequences, render it unsafe and improper for the wife to live with a husband so lost to all sense of proper care and regard for her. A continuance of such conduct might not only render her life wretched and intolerable, but tend to undermine her health and even, perhaps, to shorten her life. There was added to this unfortunate condition of affairs the fact that their relations had been imbittered by the irritating and angry incidents of the trial. We think that the court acted wisely in granting the relief specified in the judgment appealed from. It sufficiently appears that the defendant does not desire the plaintiff to return to him, but simply that he may be saved the necessity of contributing to her support; and evidently he hopes, by this appeal, to avoid the payment of the very moderate allowance made out of his estate for the plaintiff. As she has been a true and faithful wife for seven years, although, perhaps, not entirely without fault on her part, and in view of all the circumstances, and of the ages of the parties, and that there are no children of the marriage, we cannot regard this appeal as possessing any merit. If the divorce from bed and board had been denied, the court might probably have made such order for the support and maintenance of the plaintiff by the defendant out of his property as the nature of the case rendered suitable and proper. R. S. sec. 2366. We cannot see that the defendant has any valid ground to complain of the judgment. We find no error in it.

*By the Court.*— The judgment of the circuit court is affirmed.