Johnson vs. Johnson.

Johnson, Respondent, vs. Johnson, Appellant.

*May 15 — June 21, 1900.*

*Divorce: Cruel and inhuman treatment: Appeal: Costs against wife.*

1. The fact that a man was of a sullen, morose, and fretful temperament and disposition, rendering him uncompanionable as a husband for months at a time, is *held* insufficient to sustain a divorce under subd. 5, sec. 2356, Stats. 1898, on the ground of cruel and inhuman treatment practiced by other means than acts of physical violence, where the only evidence that the husband's treatment was such as to render it unsafe for the wife to live longer with him was her testimony that she brooded over her troubles until she became very nervous; that she took medicine for such nervousness; but that her health was good "except for such nervousness."

2. In this case the refusal of the clerk to tax the costs on appeal against the respondent wife was reversed.

Appeal from a judgment of the superior court of Milwaukee county: R. G. Siebecker, Judge. *Reversed.*

For the appellant the cause was submitted on the brief of
*Christian Doerfler.*

For the respondent there was a brief by *Orren T. Williams,*
and oral argument by *L. M. Ogden.*

CASSODAY, C. J.  This is an action for a divorce, commenced
June 6, 1898.  Issue being joined and trial had, the court
found as matters of fact, in effect, that the plaintiff and de-
fendant intermarried at Milwaukee, December 27, 1894; that
they lived together as husband and wife in Milwaukee until
June 28, 1896, when the plaintiff left the defendant, and since
that time has not lived with him as husband and wife; that
no child was born as the issue of such marriage; that the
plaintiff has some property in her own right, and is heir to
an interest in her father's estate; that during most of the
time she so lived with the defendant she furnished the house
in which they lived, and much of the furnishings thereof,
and during several months of that time furnished all the
money for the support of the family, including the defend-
ant; that during that time the defendant directly or indi-
rectly made application to the plaintiff for money to be
invested in some business enterprise or scheme for his benefit,
which she declined; that on account thereof the defendant
became cold and distant, and subsequently cruel, toward the
plaintiff; that while they so lived together the defendant
was guilty of cruel and inhuman treatment of the plaintiff,
practiced by other means than by acts of personal violence
toward her, which rendered it unsafe and improper for the
plaintiff to longer live with him as his wife; that the de-
fendant is of a sullen, morose, and fretful temperament and
disposition, which unfitted him for months at a time during
that time from being a companionable husband to the plaint-
iff; that the allegations of the complaint charging the de-
fendant with cruel and inhuman treatment of the plaintiff
were true as alleged; that during the whole of that time

the plaintiff at all times conducted herself in a proper and becoming manner, performing all the obligations of a faithful wife toward the defendant, notwithstanding the unkind and cruel treatment bestowed upon her by the defendant during much of the same time; that the plaintiff's name before her marriage was Pauline A. Cawker; that no alimony was claimed and none was allowed to the plaintiff herein.

As conclusions of law the court found, in effect, that the defendant was guilty of cruel and inhuman treatment of the plaintiff which entitled her to an absolute divorce; that the plaintiff was entitled to a judgment absolutely dissolving the marriage contract between the parties, and freeing them, and each of them, from all the obligations thereof; that the plaintiff during such marriage at all times treated the defendant in a proper and becoming manner as his wife; that the plaintiff retake and resume her maiden name, Pauline A. Cawker.

From the judgment entered thereon accordingly the defendant brings this appeal.

Of course, the plaintiff is not entitled to a divorce unless she has alleged and proved one of the causes for a divorce prescribed by statute (sec. 2356, Stats. 1898). It appears from the record that the plaintiff had consulted attorneys and made a complaint for a divorce on the ground of cruel and inhuman treatment before she had left the defendant; that after the decision of the court upon the first trial, and upon February 6, 1897, the defendant wrote to the plaintiff that he had a position, and was earning fair wages, and expressed a desire to begin over and live together. Sixteen months afterwards this action was commenced. The only ground upon which the trial court granted the divorce in this case is that the defendant had been guilty of "cruel and inhuman" treatment of the plaintiff practiced by "other means" than by acts of "personal violence." Subd. 5, sec.

2356.   The findings of the court go to the extent of holding
that his treatment was such as to render it unsafe and im-
proper for the plaintiff to longer live with the defendant as
his wife.   This is put wholly on the ground that he was of
a sullen, morose, and fretful temperament and disposition.
The only intimation in the evidence that such temperament
and disposition made it unsafe for the plaintiff to longer
live with the defendant is that she had brooded over her
troubles until she became very nervous; that she took medi-
cine for such nervousness; that she did not complain of such
nervousness nor any sickness on the first trial; that she
stated on that trial that her health was good; that her health
was still good, " with the exception of nervousness; " that it
was not true that her health was a great deal better while
she lived with the defendant than it was before; that she
was quite ill once or twice while living with the defendant,
and had a doctor, who gave her medicine for female trouble
which she had, but that such female trouble was not the
cause of her nervousness.   The doctor who so attended and
prescribed for her was sworn and examined as a witness,
but gave no evidence as to such nervousness.   The defend-
ant testified that he continued to cohabit and have inter-
course with the plaintiff up to within a week or two of the
time when she left him.   The only other evidence of ill
treatment, aside from his temperament and disposition, is
that the defendant on two or three occasions, when angry,
drew or shoved the plaintiff's little girl, about six years old,
by a former husband, across or upon the floor, but that does
not seem to have had any particular influence in granting
the divorce.

   The question recurs whether the evidence referred to is
sufficient to sustain the finding that it was unsafe and im-
proper for the plaintiff to live longer with the defendant.
It is very true that a sullen, morose, and fretful tempera-
ment and disposition may make a man very uncompanion-

able, but it does not follow that the exhibition of those qualities in the treatment of his wife is necessarily cruel and inhuman treatment, within the meaning of the statute. The decisions relied upon to support the judgment in this case were made in cases where there was either personal violence in fact, or such conduct on the part of the husband as to render it dangerous or unsafe or improper for the wife to continue to live and cohabit with him. *Johnson v. Johnson*, 4 Wis. 135; *Freeman v. Freeman*, 31 Wis. 235; *Crichton v. Crichton*, 73 Wis. 59; *Wachholz v. Wachholz*, 75 Wis. 377; *Hacker v. Hacker*, 90 Wis. 325; *Reinhard v. Reinhard*, 96 Wis. 555. This last case goes as far in support of the judgment as any, and the syllabus may be misleading, if considered without reference to the facts upon which it is based. In addition to having a sullen and morose disposition, and living and sleeping in the same house, and eating at the same table food prepared by the wife, without speaking to her, except in anger, for a period of three months, it was shown that the husband had in that case, six years before, struck the plaintiff; that just before the commencement of the action he had raised his hand in a threatening manner, as if to strike her, stating that if she had not then cause for divorce he would give her cause, and then drove her out of the house; that such treatment was notorious, and observed by others, and caused the plaintiff great sorrow, shame, and disgrace, inducing her to attempt to commit suicide; that by reason of such treatment *her health had been ruined*, and she could not longer remain in the same house with him. Such facts brought the case within the rule frequently sanctioned by the English courts, where it is held that " if force, whether physical or moral, is systematically exerted to compel the submission of a wife in such a manner, to such a degree, and during such length of time, as to injure her health, and render a serious malady imminent, it is legal cruelty, and she will be entitled to a judicial separation." *Kelly v.*

*Kelly*, L. R. 2 Prob. & Div. 31, on appeal *Id.* 59. And again, "a persistent course of harsh, irritating conduct, unaccompanied by actual violence, but carried to such a point as to endanger the petitioner's health, and renewed after the resumption of interrupted cohabitation, *held* to constitute legal cruelty." *Mytton v. Mytton*, 11 Prob. Div. 141. Those cases were followed in a recent case, argued by Sir Charles Russell a short time before being made lord chief justice of the queen's bench, where the facts relied on to establish the charge of cruelty consisted of a long course of systematic neglect and insult, to the effect that the husband refused to allow his wife to occupy the same room with him or to go out with him; that he was frequently absent, and refused to give any account of his absences; that he told her he hated her presence, frequently using violent language, and threatening to leave her if she did not do as he wished; that "*her health rapidly failed* during her married life, and, in the opinion of her medical attendants, her husband's conduct, and the mental distress and anxiety caused by her marital relations generally, accounted fully for the serious condition in which they found her," and hence constituted legal cruelty and good ground for a divorce. *Bethune v. Bethune* [1891], Prob. Div. 205.

The evidence in the case at bar fails to show that the treatment of the plaintiff by the defendant was "cruel and inhuman," within the meaning of those words as used in our statute cited.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause is remanded with direction to dismiss the complaint.

The respondent objected to the taxation of costs in favor of the appellant on the ground that she was not liable therefor, and the clerk sustained the objection and refused to tax said costs and insert the same in the judgment. On Sep-

tember 4, 1900, the appellant moved to review his action in that regard.

For the motion there was a brief by *Christian Doerfler,.* and oral argument by *C. E. Whelan.* They argued that. the clerk had no discretion in the matter, and should have followed the order of the court and taxed costs in accordance with secs. 2949, 2952, Stats. 1898. There is no reason growing out of the identity of the parties why the husband prevailing should not have costs against the wife.   2 Bishop, Marriage, Div. & Sep. § 815.   Where the wife has separate property or a separate income, costs in divorce suit may be awarded against her. . *Miller v. Miller,* L. R. 2 Prob. & Div. 13; *Milne v. Milne,* L. R. 2 Prob. & Div. 202; *Word v. Word,.* 29 Ga. 281; *Balkum v. Kellum,* 83 Ala. 449; *De Rose v. De Rose,* 1 Hopk. Ch. 100; *Brinckle v. Brinckle,* 6 Weekly Notes Cases, 205.

On September 25, 1900, the clerk's ruling was reversed with $10 costs, and he was directed to tax costs for appellant pursuant to the mandate.   .